## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Jaime Beck, Byron Hanson, and Lynn Melcher,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM F. AUSTIN, BRANDON SAWALICH, JEROME RUZICKA, SCOTT A. NELSON, LAWRENCE W. MILLER, W. JEFFREY TAYLOR, JEFFREY LONGTAIN, and STARKEY LABORATORIES, INC.<br><br>    Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jaime Beck, Byron Hanson, and Lynn Melcher (collectively, "Plaintiffs"), based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters formed after an inquiry reasonable under the circumstances, assert the following in support of their claims and those of the putative class, against Defendants.

## INTRODUCTION

1.      Plaintiffs, who are Starkey Employee Stock Ownership Plan ("ESOP") participants, bring this action on behalf of all ESOP participants and their beneficiaries to recover the assets they lost as a direct result of Defendants' mail fraud, wire fraud, and embezzlement of funds, and Defendants' failure to meet their duty to be reasonably prudent fiduciaries, and to recover embezzled funds to the ESOP.

2.     Between 2006 and 2015, Jerome Ruzicka, Scott Nelson, Lawrence Miller, Jeffrey Taylor, and Jeffrey Longtain (hereinafter the "RICO Defendants") stole over $30,000,000 under their own tallies from Starkey Laboratories, a corporation that manufactures hearing aids. Starkey is a privately held corporation that was owned, in part, by its employees through an ESOP. By stealing tens of millions of dollars from the company, these defendants stole from Starkey's owners, including the ESOP. The ESOP was entitled to distributions from Starkey's profits and it suffered from receiving significantly lower contributions due to the Defendants' theft, and suffered substantial losses as a result of the RICO Defendants' conduct. Over the course of at least 2008 until the ESOP was shuttered at the end of 2017, the ESOP lost almost $37 million dollars and had a net loss of almost $4 million dollars, despite Starkey itself having its "most profitable year ever" during that time, and estimated annual revenues of up to $850 million.

3.     In 2016, a federal grand jury indicted Ruzicka, Nelson, Miller, and Taylor of committing mail and/or wire fraud in the course of their overall scheme to defraud Starkey. Nelson and Longtain pleaded guilty to conspiracy and tax fraud, respectively, and testified against Ruzicka and Taylor. In 2018, a jury found defendants Ruzicka and Taylor guilty of several counts of mail and wire fraud. Ruzicka and Taylor were finally sentenced on May 15, 2019, and have been ordered to report to serve their sentences of 84 months and 18 months, respectively, on July 8, 2019.

4.     Ruzicka, Miller, and Nelson each served as ESOP fiduciaries during the time period in which they stole over $30,000,000 from Starkey. William Austin, Starkey's founder and CEO, served as an ESOP fiduciary in his role as trustee, and though Austin told

investigators he heard rumors of financial looting as early as 2006, he failed to investigate until 2015. After Austin discovered Ruzicka's fraud, he replaced Ruzicka as an ESOP trustee with his stepson, Brandon Sawalich. Although Austin and Sawalich have maintained that they had no knowledge of the theft led by Ruzicka until 2015, they both owed duties of prudence and loyalty to ESOP beneficiaries. Austin, Sawalich, Ruzicka, Miller, and Nelson are referred to in this complaint as "Fiduciary Defendants."

5.     The Fiduciary Defendants owed the ESOP fiduciary duties and were required to act prudently and solely in the interest of all of the participants and beneficiaries of the ESOP, including Plaintiffs and the Class.  This included not defrauding or embezzling tens of millions of dollars, engaging in proper oversight, and  bringing a shareholder derivative action against the RICO Defendants for their blatant violations of corporate fiduciary duties under Minnesota Law. Had the Fiduciary Defendants brought such an action, they would likely have prevailed and recovered the funds stolen from Starkey and the ESOP participants and beneficiaries. Defendants Austin and Sawalich allege that they were unaware of the fraud committed by Ruzicka, Miller, and Nelson while it was happening, but admit they failed to investigate until 2015 despite hearing rumors as early as 2006 and still have failed to take any action for the benefit of the ESOP up until and including the filing of this complaint. They had duties under ERISA to bring a derivative action to recover the funds stolen by the fraud defendants, and by failing to do so, violated their fiduciary obligations to plaintiffs. In fact, Austin filed a motion under the Crime Victim's Rights Act requesting the court name himself and Starkey as "crime victims," but did not seek to name the ESOP as a victim of fraud or attempt to recover the stolen funds for the ESOP.  The Court ordered

that Starkey Laboratories, Inc. be considered a crime victim pursuant to the Crime Victim's Rights Act, even while acknowledging that Austin had failed to pursue Crime Victim status for the ESOP and noting that the law could not benefit the ESOP or Austin as the only shareholders of Starkey.

6.      During the course of their $30,000,000 theft, the RICO Defendants committed mail fraud, wire fraud, and embezzlement of employee benefit plan funds in violation of RICO, 18 U.S.C. §§ 1962 (c) and (d). Plaintiffs bring this civil RICO action to recover those funds stolen from the ESOP.

7.      By failing to bring a derivative shareholder action against the RICO Defendants, breaching their fiduciary duties of prudence and loyalty, enabling co-fiduciaries to breach their duties through negligent oversight, and failing to cure their co-fiduciaries' breaches, Fiduciary Defendants violated their fiduciary duties under ERISA, 29 U.S.C. § 1104(a)(1) and § 1105(a)(1)-(3). Plaintiffs bring this ERISA action to recover the funds lost by the ESOP as a result of the Fiduciary Defendants' breaches of their fiduciary duties.

## THE PARTIES

8.      Plaintiff Jaime Beck is a natural person, residing in the District of Minnesota. She was an employee of Starkey from August 2006 until July 2015, and was a participant in the ESOP from August 2006 until July 2015.

9.      Plaintiff Byron Hanson is a natural person, residing in the District of Minnesota. He was an employee of Starkey from April 1985 until March 2017, and has been a participant in the ESOP from the start of the ESOP until December 31, 2017.

10.    Plaintiff Lynn Melcher is a natural person, residing in the District of Minnesota.  She was an employee of Starkey from October 2008 until April 2016, and was a participant in the ESOP from July 2009 until December 31, 2016.

11.    Defendant Starkey Laboratories Inc. ("Starkey") is a corporation domiciled in the state of Minnesota and maintains its principal place of business in Minnesota. Starkey is a large manufacturer of hearing aids and its corporate headquarters are located in Eden Prarie, Minnesota. Starkey is owned exclusively by its Founder and the ESOP.

12.    Defendant William Austin ("Austin") is a natural person, residing in the District of Minnesota. He is the Founder and CEO of Starkey.

13.    Defendant Jerome Ruzicka ("Ruzicka") is a natural person residing in the District of Minnesota. He was the President of Starkey until 2015.

14.    Defendant Scott Nelson ("Nelson") is a natural person residing in the District of Minnesota. He was the Chief Financial Officer of Starkey until 2015.

15.    Defendant Lawrence Miller ("Miller") is a natural person residing in the District of Minnesota. He was a Senior Vice President of Human Resources until 2015.

16.    William Jeffrey Taylor ("Taylor") is a natural person residing in the District of Minnesota. He was the President of Sonion, U.S. ("Sonion") until 2015 and did business with Starkey.

17.    Defendant Jeffrey Longtain ("Longtain") is a natural person residing in the District of Minnesota. He was the President of the Northland Hearing Centers ("NHC"), a wholly owned subsidiary of Starkey.

18.     Defendant Brandon Sawalich ("Sawalich") is a natural person residing in the District of Minnesota. He is currently the President of Starkey and Austin's stepson.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 1132(e) (ERISA), and 18 U.S.C. § 1964(a) (RICO), because Plaintiffs' claims arise under ERISA and RICO.

20.     Venue is appropriate in this District, and this Court has personal jurisdiction because each Defendant resides in the District and the misconduct alleged herein arose out of actions in Minnesota.

## FACTUAL ALLEGATIONS

### I.      *The Starkey ESOP*

21.     The Starkey Laboratories, Inc. Employee Stock Ownership Plan, referred to herein as the "ESOP," was originally effective January 1, 2004, and was in effect until December 31, 2017.  The provisions of the ESOP were most recently amended and restated effective January 1, 2017, and the ESOP was terminated effective December 31, 2017, via written action of the sole director of Starkey, Defendant Austin, in lieu of a meeting.  The ESOP was an employee stock ownership plan pursuant to 26 U.S.C. § 4975(e)(7) and 26 U.S.C. § 401(a).

22.     The principal purposes of the ESOP were to "recognize and reward the contributions made by Employees to the successful operation of the Employer's business and to provide each eligible Employee with an equity interest in Stock, financed by

Employer contributions."  Starkey Laboratories, Inc. Employee Stock Ownership Plan, As Amended and Restated Effective January 1, 2017.

23.    Defendant Austin was at all relevant times a trustee of the ESOP since its formation and a fiduciary under ERISA with "discretionary responsibility in the administration" of the ESOP pursuant to 29 U.S.C. § 1002 (21)(A) and 29 U.S.C. § 1102(a)(1).

24.    Defendant Ruzicka was a trustee of the ESOP and a fiduciary under ERISA with "discretionary responsibility in the administration" of the ESOP pursuant to 29 U.S.C. § 1002 (21)(A) and 29 U.S.C. § 1102(a)(1) from the formation of the ESOP until his termination in 2015.

25.    Defendant Nelson was an ESOP administrator from at least 2011 to 2013 and a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP.

26.    Defendant Miller was an ESOP administrator from at least 2010 to 2014 and a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP.

27.    Defendant Sawalich has been an ESOP trustee since he was appointed by Austin in 2016 and, therefore, is a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to exercise control over the ESOP.

## II.    RICO and Fiduciary Defendants' Scheme to Defraud Starkey and the ESOP and Failure to Engage in Proper Oversight or Prudence.

28.    From at least 2006 to September 2015, Ruzicka conspired with Nelson, Miller, Longtain, and Taylor to defraud and steal money and property from Starkey. *See*

Indictment ¶ 18, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). Ruzicka did so by forming a sham company, Archer Consulting, with Taylor and using that company as a vehicle to bill Starkey for services it did not actually provide. *Id.* ¶ 19(a). Additionally, Ruzicka and Nelson awarded themselves and Longtain restricted stock in Starkey's subsidiary, NHC. In doing so, they issued themselves 51% of the ownership of NHC and Starkey only 49%, diluting the value of the company by siphoning off share value that would have been used in valuing Starkey for purposes of determining the contributions to the ESOP. Later, after having issued themselves restricted stock in NHC, Ruzicka and Nelson then paid themselves and Longtain $15,000,000 in exchange from Starkey for terminating the restricted stock grants. *Id.* ¶ 19(c). Ruzicka, Nelson, and Miller also stole money and property from Starkey for themselves in the form of bonuses and luxury property, including a personal Minnetonka condo and a Jaguar car. *Id.* ¶ 19(d).

29.    Austin and Sawalich knew or had reason to know that this fraud existed as early as 2006. However, the structural failures of Starkey, and the failures of Austin and Sawalich to properly oversee Starkey or engage in prudent management breached their fiduciary duties to the ESOP and its beneficiaries. For example, as Fred Zimmerman, a University of St. Thomas professor emeritus noted, "There are standards of corporate protocol which owners, executives, managers and employees should all abide by," which Austin and Starkey failed at.[1]

---

[1] *See* Dee DePass, *Starkey Trial Talk of Town as Legal, Business Experts Dissect Split Verdict*, Star Tribune (Mar. 9, 2018), *available at* http://www.startribune.com/starkey-trial-talk-of-town-as-legal-business-experts-dissect-split-verdict/476432743/   (last accessed May 22, 2019).

30.     From 2006 until at least 2015, Austin was the sole member of the board of directors at Starkey.  There was no audit committee to review results or team to take action on problems.  At the same time, Austin admitted that he did not read financial reports, did not oversee the day to day operations of Starkey, and did not read or oversee the financial and corporate documents he was solely responsible for.  Documents in the criminal trial included evidence of a history of forged signatures, deleted payroll records, concealed checks and hidden payments.

31.     According to Karl Strom, a longtime editor of the Hearing Review, a trade publication based in Duluth, Austin abandoned his fiduciary duties to the company and the ESOP entirely in order to work with Starkey's humanitarian arm.  According to a 2018 Forbes profile, "[f]or years, the only consistent sign of [Austin's] presence at the company's headquarters was the life-size statue of himself near one of the entrances; meanwhile he was rubbing elbows with celebrities like Johnny Depp and Katy Perry."[2]  Instead, Austin spent 25 hours a week traveling in conjunction with the foundation.  "With Ruzicka running the place, Austin was free to emulate his hero, Albert Schweitzer, and travel the world doing good. '[Austin] literally handed over the reins of the company to [Ruzicka], and [Ruzicka] ran the company,' Strom says. '[Austin] would brag about not being involved in the day-to-day operations.'"  Austin did not review financial statements, budgets, or audits, and

---

[2] *See* Michela Tindera, *Runaway Billionaire: Meet the CEO Whose Company Descended into Fraud, Embezzlement and Betrayal*, Forbes Magazine (June 12, 2018), *available at* https://www.forbes.com/sites/michelatindera/2018/06/12/starkey-hearing-bill-austin/#185010263090 (last accessed May 22, 2019).

testified "if anybody ever handed me one—I wouldn't read it because I wouldn't know how to read [the audit reports]."

32.     At no point during the class period has any fiduciary at Starkey, or any of the Fiduciary Defendants, reconciled this past misconduct to make the ESOP whole.

### Archer Consulting

33.     Ruzicka and Taylor formed Archer Consulting and used that entity to bill Starkey for false commissions and consulting fees. *See* Indictment ¶¶ 22, 24, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). Between 2006 and 2015, Ruzicka and Taylor stole $7,650,000 from Starkey by issuing false invoices to Starkey from Archer Consulting. *Id.* ¶ 20.

34.     Beginning in 2006, Ruzicka had Starkey pay Archer Consulting a "commission" on all sales made by Sonion to Starkey. *Id.* ¶ 22. Taylor was the president of the U.S. division of Sonion. Taylor submitted the invoices to Ruzicka, who would then cause Starkey to pay Archer Consulting. *Id.* ¶ 23.

35.     Around 2010, Ruzicka and Taylor stopped referring to the payments as commissions and instead began calling the payments "consulting fees." *Id.* ¶ 24. They signed and back-dated a consulting agreement in which Starkey hired Archer Consulting for advice on purchasing transducers, a hearing aid component Sonion sold to Starkey. *Id.* The agreement established that Starkey would pay Archer Consulting $75,000 per month. *Id.* From 2010 to 2015, Ruzicka and Taylor issued invoices for these fees to Starkey and the two would then split the payments. *Id.* ¶ 25.

*NHC Stock Fraud*

36.     After 35 years of manufacturing hearing aids, Starkey decided to jump into the retail business in 2005, and bought its first hearing aid store in order to prevent a competitor from taking it over.  This retail sales operation was organized under a subsidiary of Starkey, a Northland retail subsidiary, which was 100% owned by Starkey.  The profits from this subsidiary contributed to the assets and stock of the ESOP.

37.     Around 2006, Ruzicka and Nelson formed NHC as a new subsidiary of the Northland retail subsidiary. *See* Indictment ¶ 37, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). They caused NHC to issue 100,000 shares of stock, 51,000 of which were stock shares issued to themselves and Longtain. *Id.* ¶ 38.  As a result, Starkey lost 51% of the stock in the Northland retail subsidiary, and those assets were unavailable for the ESOP.  The stock had a ten year vesting period and if their employment was terminated during that time, they would lose their shares. *Id.*  Ruzicka approved all aspects of the change under his signatory power for Starkey.  Ruzicka, Nelson, and Longtain also used life insurance policies and other bonuses to reward Starkey employees who helped them, to the detriment of company profits and ESOP assets.

38.     Austin heard rumors about the Northland improprieties starting in 2006, but did not investigate them until 2015, when he heard from an employee that Ruzicka was forming a new company that would compete with Starkey.  Austin also would have had access to the audited financial statements that laid out Northland and NHC's ownership structure year after year, and was responsible for and required to sign off on corporate and tax filings as Starkey's sole director, but still failed to investigate improprieties by the RICO

Defendants. Austin's negligent oversight of the ESOP enabled Ruzicka, Nelson, and Miller to breach their duties of loyalty and prudence to the ESOP.

39.    Miller and Ruzicka engaged in a cover-up of their conduct.  Miller deleted all NHC items from executive compensation records in order to hide and continue to perpetrate the fraud.

40.    Around 2013, Ruzicka caused NHC to pay Ruzicka and Nelson approximately $15,000,000 for their unvested stock from Starkey assets. *Id.* ¶ 39. Nelson directed Starkey to pay Ruzicka, Nelson, and Longtain a total of $8,200,000. *Id.* ¶ 40. In December 2013, Nelson "grossed up" the payments for taxes, sending approximately $7,000,000 from Starkey to the IRS on behalf of Ruzicka, Nelson, and Longtain. *Id.*

### *Bonuses and Luxury Property*

41.    In 2006, Ruzicka signed an employment agreement with Miller that granted Miller an annual bonus of $50,000 from 2006 to 2015. *Id.* ¶ 44. At Ruzicka and Miller's direction, Starkey paid Miller about $88,250 annually, which consisted of the $50,000 bonus "grossed up" for taxes. *Id.* Miller, Ruzicka, and Nelson manipulated Starkey's gross payroll reports to conceal Miller's bonuses. *Id.* ¶ 45. Starkey's director of payroll would email completed payroll reports to Miller, who would then modify them to hide his compensation. *Id.* ¶ 46.

42.    In 2015, Starkey paid $390,000 to Ruzicka in the form of a bonus, "grossed up" for taxes. *Id.* ¶ 50. Ruzicka told Miller to process this bonus and falsely claimed it was justified because Starkey's revenue had grown by more than 10% in 2014. *Id.* Ruzicka relied

on a falsified profit and loss statement to support this claim. *Id.* This payment was also concealed on Starkey's payroll report. *Id.* ¶ 52.

43.     In 2012, Nelson used Starkey funds to purchase a condominium for himself and his paramour, who was also a Starkey employee. *Id.* ¶ 53. Starkey paid $201,887.59 for a condo at Smetana Drive in Minnetonka, Minnesota. *Id.* ¶ 54. The residence was used exclusively for Nelson's private, non-business related use. *Id.* ¶ 55.

44.     In 2014, Nelson stole $225,000 from Starkey by lying to Starkey's controller by telling him the check was for an "insurance expense." *Id.* ¶ 57. However, Nelson used the $225,000 payment to refill his investment account after he had paid approximately $716,000 for a house in Prior Lake, Minnesota. *Id.* Nelson concealed this theft by creating a false "promissory note" that disguised the payment as a loan from Starkey, but Nelson never documented the loan in Starkey's loan register and never made a payment on the loan. *Id.* ¶ 58.

45.     Around April 8, 2014, Nelson issued a check for $200,000 to Ruzicka. *Id.* ¶ 59. Nelson told Starkey's controller that the check was for "officers insurance" for Ruzicka, but Ruzicka used the money to pay his personal income taxes. *Id.* Nelson and Ruzicka concealed the payment by failing to record it as compensation, so it was not included on Starkey's payroll reports. *Id.* ¶ 60.

46.     On about August 30, 2010, Ruzicka caused Starkey to purchase a 2011 Jaguar for approximately $119,188.77 for his personal use. Starkey paid the fees, insurance, and costs for the Jaguar from 2010 to 2015. *Id.* ¶ 62. On about July 1, 2015, Ruzicka transferred

ownership of the car from Starkey to himself. *Id.* ¶ 63. When he transferred the vehicle to himself, the value of the Jaguar was approximately $44,075.

### III.   *RICO Defendants Engaged in Mail and Wire Fraud that was Indictable Under 18 U.S.C. §§ 1341 and 1343.*

47.     Each of the RICO defendants engaged in a conspiracy to commit mail and wire fraud. On September 21, 2016, a federal grand jury indicted defendants Ruzicka, Nelson, Taylor, and Miller of engaging in a conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. *See* Indictment ¶ 18 *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). The grand jury also indicted these defendants for specific counts of mail and wire fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343. *Id.* ¶¶ 65-68. To support these allegations, federal prosecutors described in detail the RICO defendants' scheme to defraud Starkey and listed specific instances of their use of the mail and wire communications to facilitate their scheme. *Id.* ¶¶ 66, 68. Defendants committed these fraudulent acts on or about the specific dates set forth in the Indictment at paragraphs 66 and 68.

48.     Ruzicka, Nelson, Taylor, and Miller were each indicted for several counts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 for specific instances of placing items in the mail and transmitting information by means of wire to carry out fraudulent activity. *Id.* ¶¶ 66, 68. Their conduct was therefore indictable under those statutes. At Ruzicka's criminal trial, Longtain also admitted to helping Ruzicka and Nelson to steal

money from Starkey through the restricted stock sale. At the trial, he stated, "I did it. I am guilty."[3] Therefore, his conduct is also indictable under 18 U.S.C. §§ 1341, 1343.

IV. *RICO Defendants Stole Employee Benefit Plan Assets and Therefore Engaged in Conduct Indictable Under 18 U.S.C. § 664.*

49.     The Starkey ESOP is an employee benefit plan subject to Title I of ERISA because, according to the express terms of its founding documents, it is a plan maintained by Starkey for the purpose of providing retirement income to Starkey employees.

50.     The ESOP's assets are shares of ownership interest in Starkey. Because Starkey is incorporated as a private entity owned in part by the ESOP, Starkey's assets and funds belong, in part, to the ESOP.  On December 31, 2013, Austin held 93.6% of Starkey's outstanding shares and the ESOP held the remaining 6.4%.

51.     By stealing Starkey's funds as described in greater detail above, each RICO defendant stole the ESOP's assets. Specifically:

a.     Ruzicka, Nelson, and Longtain diluted the value of the ESOP when they issued themselves 51% of the restricted stock in NHC and awarded only 49% of ownership to Starkey, taking value out of Starkey without providing appropriate work in return, given the sham status of NHC.

---

[3] *See* Dee DePass, *Former Starkey Executive Jeff Longtain Said He Took Phony Commissions*, Star Tribune (Jan. 26, 2018), *available at* http://www.startribune.com/former-starkey-executive-jeff-longtain-said-he-took-phony-commissions/471358944/ (last accessed May 23, 2019).

b.      Ruzicka, Nelson, and Longtain stole $15,000,000 from Starkey and the ESOP when they caused Starkey to pay them in exchange for terminating their restricted stock options in NHC.

c.      Ruzicka and Taylor stole $7,650,000 from Starkey and the ESOP by causing it to pay for their false consulting fees.

d.      Nelson stole $201,887.59 from Starkey and the ESOP to pay for his personal condo in Minnetonka, Minnesota.

e.      Nelson stole $225,000 from Starkey and the ESOP to refill his investment account after having bought a new home in Prior Lake, Minnesota.

f.      Ruzicka stole $200,000 from Starkey and the ESOP to pay for his personal income taxes.

g.      Ruzicka stole $390,000 from Starkey and the ESOP in 2015 in the form of a fraudulent bonus.

h.      Ruzuicka stole at least $119,188.77 from Starkey and the ESOP to pay for a Jaguar vehicle for his personal use. He also stole money to pay for its auto insurance.

i.      Miller stole $88,250 annually from Starkey and the ESOP from 2006 to 2015 in the form of fraudulent annual bonuses.

j.      Ruzicka, Miller and Longtain used the award of life insurance policies and bonuses stolen from Starkey and the ESOP from 2006 to 2015 for employees who helped perpetrate the fraud.

52.      Because the RICO defendants stole money from the ESOP for their own personal use, their conduct is indictable under 18 U.S.C. § 664, which prohibits theft or

embezzlement from employee benefit plans. Although these defendants were not actually indicted for this crime, a grand jury did indict each of these defendants, except Longtain, for other crimes that arose from the same underlying conduct. Each of those defendants are therefore indictable for 18 U.S.C. § 664. At Ruzicka's criminal trial, Longtain also admitted to helping Ruzicka and Nelson to steal money from Starkey through the restricted stock sale and theft of $143,000 in fake commissions and fees. At the trial, he stated, "I did it. I am guilty."[4] Therefore, his conduct is also indictable under 18 U.S.C. § 664.

### V.    RICO Defendants were Employed by or Affiliated with Starkey and Engaged in a Pattern of Racketeering Activity.

53.    When each of the RICO defendants engaged in mail fraud, wire fraud, or embezzlement of employee benefit plan assets, they were associated with Starkey, which is a legal entity incorporated to manufacture and sell hearing aids. The mail fraud, wire fraud, and embezzlement of employee benefit plan assets, described above, constitute racketeering activity under RICO because the conduct was indictable under 18 U.S.C. §§ 664, 1341, and 1343.

54.    For the purposes of Plaintiffs' RICO claims, Starkey is the RICO enterprise and is an actual legal entity incorporated under the laws of Minnesota.

55.    Ruzicka was employed by Starkey from approximately 1979 to September 2015 when Starkey terminated his employment. From 1998 to 2015, Ruzicka served as President of Starkey. As described in paragraphs 28-46, Ruzicka engaged in a pattern of mail and wire fraud with Starkey from 2006 to 2015. For example, Ruzicka used the mail

---

[4] *See id.*

to carry out the fraud on at least six specific occasions between June 26, 2013 and July 1, 2015. *Id.* ¶ 66. He used wire communications to carry out the fraud on at least sixteen specific occasions between October 7, 2011 and July 7, 2015. *Id.* ¶ 68. These actions constituted a pattern of stealing Starkey ESOP assets because, in each transaction, he was transferring money or property from Starkey to himself or other RICO defendants directly or through his sham consulting firms.

56.     Nelson was employed by Starkey from approximately 1997 to September 2015, when Starkey terminated his employment. During the course of the fraud, from at least 2006 to 2015, Nelson served as Starkey's CFO. As described in paragraphs 28-46, Nelson engaged in a pattern of mail and wire fraud with Starkey from 2006 to 2015. For example, Nelson used the mail to carry out the fraud on at least two specific occasions between June 26, 2013 and July 11, 2013. *Id.* ¶ 66. He used wire communications to carry out the fraud on at least two other occasions on or about August 8, 2013. *Id.* ¶ 68. In addition to these specific transactions, Nelson made other transactions using mail and wire communications in 2013 by causing Starkey to pay $8,200,000 to himself, Ruzicka, and Longtain. *See id.* ¶ 40. These actions constituted a pattern of stealing Starkey ESOP assets because, in each transaction, he was transferring money or property from Starkey to himself or other RICO defendants directly or through their sham consulting firms.

57.     Miller was employed by Starkey from approximately 1987 to September 2015, when Starkey terminated his employment. During the course of the fraud, from at least 2006 to 2015, Miller served as a senior vice president of human resources at Starkey. As described in paragraphs 28-46, Miller engaged in a pattern of wire fraud with Starkey

from 2006 to 2015. For example, he used wire communications to carry out the fraud on at least three separate occasions between December 14, 2012 and July 25, 2014. *Id.* ¶ 68. These actions constituted a pattern of stealing Starkey ESOP assets because, in each transaction, he was transferring money or property from Starkey to himself or other RICO defendants directly or through their sham consulting firms.

58.     Taylor was associated with Starkey during the course of the fraud, from at least 2006 to 2015, because he participated in the conduct of Starkey's affairs by selling hearing aid components to Starkey. Taylor served as President of a hearing aid component manufacturer, Sonion U.S. In that capacity, he sold hearing aid components to Starkey. Taylor also associated himself with Starkey, as described in paragraphs 28-46, by engaging in a pattern of mail and wire fraud with Starkey from 2006 to 2015. These actions constituted a pattern of stealing Starkey ESOP assets. For example, he used mail to carry out the fraud on at least three separate occasions between February 8, 2014 and February 3, 2015. *Id.* ¶ 66. He used wire communications to carry out the fraud on at least ten separate occasions between February 15, 2012 and July 7, 2015. *Id.* ¶ 68. These actions constituted a pattern of stealing Starkey ESOP assets because, in each transaction, he was transferring money or property from Starkey to himself or other RICO defendants directly or through their sham consulting firms.

59.     Longtain was President of NHC, a wholly owned subsidiary of Starkey, during the course of the fraud, from at least 2006 to 2015. NHC acquired and operated hearing-aid retail stores and as President, Longtain was associated with Starkey because he operated a wholly owned Starkey subsidiary that sold Starkey products in retail stores. He

also associated with Starkey by engaging in a pattern of racketeering conduct with Starkey from 2006 to 2015. Specifically, Longtain conspired with Nelson and Ruzicka to accept a series of payments from Starkey in 2013 that totaled approximately $8,200,000. *Id.* ¶ 40. He used wire communications to carry out the fraud and, by conspiring with Nelson and Ruzicka to make these payments, Longtain engaged in a pattern of activity that stole ESOP assets. He made these payments over the course of several months from June through August 2013, and in December 2013, he transmitted approximately $7,000,000 to the IRS from Starkey to cover the income taxes he, Ruzicka, and Nelson owed on the money they had stolen from Starkey. *Id.* ¶ 40

## VI. RICO Defendants Racketeering Activity Stole ESOP Assets, Which Directly Harmed ESOP Participants.

60.     By stealing more than $30,000,000 from Starkey, the RICO defendants stole assets that rightfully belong, in part, to the ESOP. Starkey is taxed as a Subchapter S corporation under federal and state income tax laws, so in lieu of corporate income taxes, the stockholders must separately account for Starkey's income, deductions, losses, and credits. *See* ESOP 2010 Form 5500 at 27. Therefore, the ESOP owns a share of Starkey's assets. Additionally, because Starkey made annual stock contributions to the ESOP based on Starkey's profits, those annual contributions were improperly diminished and the stock was undervalued because of RICO Defendants' fraud. By stealing over $30,000,000 from Starkey, the RICO defendants stole from the ESOP, harming each ESOP participant and depriving them of those stolen assets.

61. Although the government has criminally prosecuted RICO defendants (with the exception of Longtain, who cooperated with the government) ESOP participants have not recovered any portion of the assets stolen by the RICO defendants.

### VII. Fiduciary Defendants Satisfy ERISA's Definition of Fiduciary and Breached Duties of Prudence and Loyalty to the Starkey ESOP.

62. Each Fiduciary Defendant meets ERISA's definition of fiduciary because they have all served as a plan trustee or administrator or they exercised significant control over the ESOP.

63. Austin has been an ESOP trustee since its formation and, therefore, he is a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to exercise control over the ESOP. He was acting as a fiduciary and made a decision with respect to the administration of the ESOP when he failed to bring a shareholder derivative action to recover the funds stolen by Ruzicka, Nelson, and Miller after he learned of their fraud in 2015, and breached his fiduciary duties to the ESOP by failing to exert appropriate oversight over the operation of Starkey and the ESOP.  Austin had a fiduciary duty to make sure that the ESOP's assets were protected by overseeing operations of the company for which he is the sole director, and to bringing in expertise in accounting, finance, legal, and the like.

64. Ruzicka was an ESOP trustee from its formation until his termination in 2015. During that time period, he was a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to exercise control over the ESOP. He was acting as a fiduciary and made a decision with respect to the administration of the ESOP when he failed to bring a shareholder derivative action between 2006 and 2015 to recover the funds stolen by himself, Nelson, and Miller. He also acted in his capacity as a fiduciary when, while overseeing the

ESOP, he failed to investigate or make any attempt to recoup the losses to the ESOP that resulted from his illegal activity. By ignoring the ESOP's losses so that he could reap the benefits of his embezzlement scheme, Ruzicka breached his duty of loyalty to the ESOP.

65.    Nelson was an ESOP administrator from at least 2011 to 2013. During that time period, he was a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP. Specifically, he had authority to direct the activities of the trust by, for example, paying out benefits to beneficiaries and maintaining records. *See* Defendant Jerome Ruzicka's Motion for a New Trial as a Result of Prosecutorial Misconduct, Ex. 2 at 59, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Apr. 12, 2018), ECF No. 438-2. He was acting as a fiduciary and made a decision with respect to the administration of the ESOP when he failed to bring a shareholder derivative action between 2011 and 2013 to recover the funds stolen by himself, Ruzicka, and Miller. By failing to investigate or make any or make any attempt to recoup the losses to the ESOP that resulted from his illegal activity, Nelson made a decision with respect to the administration of the ESOP. He ignored the ESOP's losses so he could continue to reap the benefits of his embezzlement scheme, breaching his duty of loyalty to the ESOP.

66.    Miller was an ESOP administrator from at least 2010 to 2014. During that time period, he was a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP. Specifically, he had authority to direct the activities of the trust by, for example, paying out benefits to beneficiaries and maintaining records. *See id.* He was acting as a fiduciary and made a decision with respect to the administration of the ESOP when he failed to bring a shareholder derivative action between 2010 and 2014

to recover the funds stolen by himself, Ruzicka, and Nelson. By failing to investigate or make any attempt to recoup the losses to the ESOP that resulted from his illegal activity, Miller made a decision with respect to the administration of the ESOP. He ignored the ESOP's losses so he could continue to reap the benefits of his embezzlement scheme, breaching his duty of loyalty to the ESOP.

67.     Sawalich has been an ESOP trustee since he was appointed by Austin in 2016 and, therefore, is a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to exercise control over the ESOP. He was acting as a fiduciary and made a decision with respect to the administration of the ESOP when he failed to bring a shareholder derivative action to recover the funds stolen by Ruzicka, Nelson, and Miller after he learned of their fraud and was appointed as a trustee in 2016.

68.     Ruzicka, Miller, and Nelson each had knowledge of each other's breaches of fiduciary duties and made no reasonable efforts to cure those breaches. In fact, they conspired with each other to conceal their embezzlement of Starkey and ESOP assets and their subsequent failure to recover those funds. They were acting in their capacity as fiduciaries when they concealed their fiduciary breaches and failed to make reasonable efforts to cure those breaches.

## VIII. Fiduciary Defendants had an Obligation to Bring a Shareholder Derivative Action Against Ruzicka, Miller, and Nelson and otherwise Breached their Fiduciary Duties to the ESOP.

69.     By engaging in a pattern of fraud that stole money from Starkey, Ruzicka, Nelson, and Miller breached their corporate law duties to Starkey and its minority shareholder, the ESOP.

70.     Austin told federal prosecutors that he discovered the fraud in July 2015. Ruzicka informed Austin that he was considering working with other current Starkey employees to form a new company called My Hearing Direct that would compete with Starkey.   Ruzicka believed that this was consistent with the terms of his employment contract; Austin disagreed and instigated an internal investigation with counsel to "shut down the venture and prevent his longtime president from leaving with valued employees." At that point, Austin, along with other Fiduciary Defendants, conducted an "aggressive internal investigation" that ultimately resulted in the firing of Ruzicka, Nelson, and Miller.

71.     While the internal investigation was originally about the non-compete requirements, "the scope of the probe quickly widened."[5]  It was during this investigation that Austin and Sawalich discovered the $15 million dollar NHC deal, and Ruzicka confessed stealing "About $10 million."[6]

72.     The Fiduciary Defendants had a duty under ERISA to bring a derivative action on behalf of the ESOP against Ruzicka, Nelson, and Miller for breaching their duties as corporate officers. This duty began in 2006, when Ruzicka, Miller and Nelson began conspiring, and when Austin heard rumors about the Northland improprieties.  This duty continues to the present.   When the ESOP fiduciaries became aware of the RICO defendants' breaches, they were obligated to bring a derivative action on behalf of the

---

[5] *See* Jeffrey Meitrodt and Dee DePass, *Starkey Probe That Resulted in a $20 Million Embezzlement Case Started With Small Betrayal*, Star Tribune (Oct. 3, 2016), *available at* http://www.startribune.com/starkey-probe-that-resulted-in-a-20-million-embezzlement-case-started-with-small-betrayal/395522871/ (last accessed May 23, 2019).
[6] *See id.*

529352.13                                    24

ESOP. A reasonably prudent fiduciary would have brought an action against Ruzicka, Nelson, and Miller to recover the funds stolen from Starkey and the ESOP.

73.     Ruzicka, Nelson, and Miller each knew about their theft of Starkey assets from 2006 to 2015 and during the time they served as fiduciaries. During this time period, they breached their duties under ERISA by failing to bring a shareholder derivative action against themselves, Taylor, and Longtain. They also intentionally concealed this breach by keeping their scheme a secret from ESOP participants.

74.     Austin and Sawalich ostensibly did not discover the RICO defendants' breaches of corporate law duties until at least July 2015. However, Austin admitted to public sources that he was aware there might be improprieties as early as 2006. In addition, as the sole director of Starkey, Austin was obligated to engage in appropriate oversight that would have discovered such improprieties. When Austin discovered those breaches but failed to bring a derivative action against RICO defendants, he breached his own fiduciary duties under ERISA. Sawalich similarly breached his duties under ERISA after he was appointed as a trustee and, despite having knowledge of Ruzicka, Miller, and Nelson's breaches of fiduciary duty, failed to bring a derivative action against RICO defendants to recover ESOP funds. Sawalich's failure to correct prior breaches consititues a separate breach of fiduciary responsibility by Sawalich as a successor fiduciary.

75.     When Starkey began the internal investigation in July 2015 that ultimately resulted in firings in September 2015 and federal indictments in September 2016, it was under no obligation to make those investigations public or cooperate with federal prosecutors. However, a Starkey spokesman said that Austin felt compelled to act: "Anyone

who thinks the company and Mr. Austin should have 'kept quiet' when they uncovered evidence that more than $30 million was stolen obviously does not know all of the facts and does not know Mr. Austin," said Jon Austin, who is not related to the owner. "If crimes of this nature have been committed, those responsible should be prosecuted, not rewarded with a financial settlement that allows them to go away quietly."

76.     As part of the internal investigation, Austin and Sawalich hired WayPoint, Inc., a "go-to firm in the Twin Cities for companies that suspect employee misconduct," which charges "'well over' $100 per hour for its services," and at any point, Starkey had "six to eight investigators at Starkey's headquarters in Eden Prairie, interviewing employees and poring over thousands of internal documents."

77.     However, at no point has this diligence or investigatory prowess extended to protecting the ESOP.  Nearly 2.5 years after federal indictments made the fraud public and nearly 3.5 years after commencing internal investigations, not to mention 13 years after the fraudulent schemes started and Austin himself was aware of potential concerns, no action has been brought on behalf of the ESOP.  No attempt has been made to make the ESOP and its beneficiaries – Starkey Employees – whole.

### IX.     If Fiduciary Defendants had Brought a Shareholder Derivative Action Against Ruzicka, Nelson, and Miller Under Minnesota Law, They Would have Won the Lawsuit and Recovered ESOP Funds for ESOP Participants.

78.     If Fiduciary Defendants had brought a derivative action against Ruzicka, Nelson, and Miller for breaching their duties under the Minnesota Business Corporation Act, they likely would have succeeded. Each element of such an action would likely have been met.  First, Ruzicka, Nelson, and Miller each meet the definition of "officer" under

Minn. Stat. § 302A.011.  Second, as a result, Ruzicka, Nelson and Miller owed duties of prudence and loyalty to Starkey under Minn. Stat. § 302A.361. Third, by charging Starkey false consulting fees, orchestrating and carrying out the restricted stock purchase of NHC stock, and stealing other assets from Starkey as described above, each of these defendants breached their duties to Starkey as corporate officers.

79.     As the president of Starkey, Ruzicka was appointed by Austin to operate and manage Starkey and thus he qualifies as an "officer" under the MBCA, *see* Minn. Stat. § 301A.011, subd. 18. As Starkey's general counsel, Susan Mussell, has stated, Ruzicka acted "like a 'Board' in the sense he alone reported company activity, strategies, profitability, etc. to Mr. Austin." Defendant Jerome Ruzicka's Motion for a New Trial as a Result of Prosecutorial Misconduct, Ex. 1 at 2, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Apr. 12, 2018), ECF No. 438-1. Ruzicka owed corporate duties to Starkey and breached those duties by charging it false consulting fees, carrying out the restricted stock purchase of NHC stock, awarding himself bonuses, and purchasing the Jaguar with company funds for his personal use. His actions were done solely for the benefit of Ruzicka and his co-conspirators and contrary to the interests of Starkey.

80.     As the CFO of Starkey, Nelson was an officer under the MBCA and owed duties of prudence and loyalty to Starkey. By carrying out the restricted stock purchase of NHC stock and using Starkey funds to pay for personal real estate, Nelson breached those corporate duties. His actions were done for the sole benefit of Nelson and his co-conspirators and were contrary to the interests of Starkey

81.     As a senior vice president of human resources for Starkey, Miller was appointed by Austin to serve in that role and thus qualifies as an Officer under the MBCA. He breached the corporate duties he owed to Starkey by stealing annual bonuses from Starkey solely for his own benefit, contrary to the interests of Starkey.

### X.     Fiduciary Defendants Breached their Duties as Co-Fiduciaries by Concealing Fiduciary Breaches, Enabling Fiduciary Breaches Through Negligent Oversight, and Failing to Cure Fiduciary Breaches.

82.     Although Austin heard rumors of the NHC stock fraud as early as 2006, he made no effort to investigate the fraud for the benefit of Starkey or the ESOP. In fact, despite his status as one of the ESOP's two trustees, Austin failed to oversee the ESOP's operations or even read the ESOP's financial documents. His negligent failure to monitor the ESOP's operations and financial status enabled Ruzicka, Miller, and Nelson to breach their fiduciary duties. If Austin had acted like a reasonably prudent fiduciary, by reviewing the ESOP's financial statements and overseeing its operation, he would have, at the very least, investigated the large losses the ESOP and Starkey experienced as a result of the fraud scheme. Ruzicka, Miller, and Nelson were only able to raid Starkey and devalue the ESOP because Austin was not overseeing the company's or ESOP's operations, despite his legal obligation to do so.

83.     After Austin learned about Ruzicka, Miller, and Nelson's fraud scheme and their breaches of their fiduciary duties to ESOP participants, Austin had an obligation to make reasonable efforts to cure the breach. However, he has made no attempt to recover any of the lost funds for the benefit of the ESOP. Despite claiming that he, as a shareholder

in Starkey, was personally a victim of the fraud, Austin did not name the ESOP as a victim as well.

84.     Sawalich similarly failed to cure Ruzicka, Miller, and Nelson's breaches of fiduciary duty after he became an ESOP trustee in 2016. He also failed to make any efforts to cure Austin's breaches of fiduciary duties because he has taken no action to recover funds for the ESOP.

85.     Ruzicka, Miller, and Nelson are also each liable as co-fiduciaries for each other's breaches because they worked to conceal their fraud scheme from Austin and the ESOP participants. By keeping their fraud scheme a secret, they actively concealed their breaches of their fiduciary duty of loyalty. Ruzicka, Miller, and Nelson also failed to take any action to cure the breaches of their co-fiduciaries because they were participating in the scheme that caused the breaches.

## **CLASS-RELATED ALLEGATIONS**

86.     Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23(a), as well as 23(b)(3), as representatives of a class (the "Class") defined as:

> All persons who are or were participants in, or beneficiaries of, the Starkey Laboratories, Inc. Employee Stock Ownership Plan at any point during the class period. The class begins on January 1, 2006 and continues through December 31, 2017.

Plaintiffs reserve the right to redefine the Class prior to certification.

87.     This action is brought, and may properly be maintained, as a class action pursuant to Federal Rule of Civil Procedure 23.   This action satisfies the numerosity,

typicality, adequacy, predominance, and superiority requirements of those provisions. The members of the Class are readily ascertainable from records maintained by Defendants Starkey, Austin, and Sawalich.

88.     Numerosity.   Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. At the end of 2016, the ESOP had 1,739 active participants and 2,024 participants with account balances.

89.     Typicality.   Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and Class members are entitled to shares of Starkey stock through the ESOP. Plaintiffs and all members of the Class were damaged by the same wrongful conduct by Defendants—i.e., as a result of Defendants' breaches of fiduciary duties and RICO violations, the ESOP's funds and assets were diminished, stolen and undervalued. The Plaintiffs and all members of the Class are entitled to the same relief—i.e., restoring those stolen funds to the ESOP.

90.     Adequacy.   Plaintiffs will fairly and adequately protect and represent the interests of the Class.  The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the other members of the Class.   Plaintiffs have retained counsel that are competent and experienced in the prosecution of complex class action litigation, including ERISA litigation, and have particular experience with class action litigation involving actions for the benefit of shareholders.  Plaintiffs' counsel will undertake to vigorously protect the interests of the Class.

91.     Commonality.   Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members.  The

claims of all Class members originate from the same fraud, misconduct, breaches of ERISA fiduciary duties, and violations of RICO perpetrated by Defendants.

92.    Questions of law and fact common to Plaintiffs and the Class include:

a.    Whether Defendants' conduct violated ERISA;

b.    Whether Defendants acted as fiduciaries under ERISA;

c.    Whether Defendants acted as ERISA fiduciaries when they failed to bring a shareholder derivative action against corporate officers;

d.    Whether Defendants breached their fiduciary duties to Class members by failing to bring a derivative shareholder action against corporate officers who breached their corporate law duties;

e.    Whether Defendants' breaches of fiduciary duty resulted in a loss to the ESOP;

f.    Whether Defendants who are ERISA fiduciaries would have won a derivative shareholder lawsuit had they brought one against corporate officers to recover stolen funds;

g.    Whether Defendants' conduct violated RICO;

h.    Whether Defendants' conduct was indictable under 18 U.S.C. §§ 664, 1341, or 1343.

93.    Under Rule 23(b)(3), class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or

expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs any possible difficulties in the management of this class action.

94.     With respect to Rule 23(b)(1)(B), the prosecution of separate actions by each plaintiff in the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

95.     Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

96.     Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## COUNT I

### ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2), CLAIM FOR BREACH OF FIDUCIARY DUTIES ESTABLISHED BY ERISA §§ 404 & 409, 29 U.S.C. §§ 1104 & 1109
**(on behalf of Plaintiffs and the Class against Fiduciary Defendants Austin, Ruzicka, Miller, Nelson, and Sawalich)**

97.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

98.     Count I arises under ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1109 breaches of fiduciary duties as required by ERISA § 404, 29 U.S.C. § 1104 and is asserted against

Fiduciary Defendants Austin, Sawalich, Ruzicka, Nelson, and Miller because they are liable for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109.

99.     Under ERISA § 404, trustees of retirement plans must fulfill their responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B) (codifying ERISA § 404).

100.    A reasonably prudent fiduciary would have brought a derivative action against Ruzicka, Nelson, and Miller to recover the stolen assets for the ESOP. By failing to bring derivative shareholder actions against Ruzicka, Nelson, and Miller, Defendants Austin, Sawalich, Ruzicka, Miller, and Nelson breached their duties of prudence and loyalty to the ESOP.  *See LaRue v. DeWolff, Boberg & Assocs., Inc*., 552 U.S. 248, 256 (2008). The ESOP suffered losses as a result of the Fiduciary Defendants' breaches of fiduciary duties in failing to bring a derivative suit.  For example, the ESOP posted losses of almost nine and a half million dollars at the end of 2008, almost two million dollars at the end of 2011, and over seven million dollars at the end of 2012.  Between 2006 and 2015, Fiduciary Defendants Ruzicka, Nelson, and Miller engaged in egregious fraudulent conduct that breached their fiduciary duties to the ESOP and all of its participants, and as a result, the value of the ESOP assets declined.  In addition, Fiduciary Defendant Austin did not discover the fraud until 2015 because he had failed to conduct oversight as to the activities of the company and the other fiduciaries. After he discovered the fraud, he failed to engage in any conduct to make the ESOP whole.  Instead, in 2015 the ESOP lost nearly $15,000,000 in

assets that resulted in losses to the ESOP and to plan participants, while Austin simultaneously stated publicly that "2015 was the company's best year yet, producing $800 million in sales." Fiduciary Defendant Sawalich continued the lack of oversight in 2016 through the ESOP's discontinuation. The ESOP also lost nearly $2 per share in stock value between 2014 and 2015, and lost tens of millions of dollars between 2008 and 2015 that a reasonably prudent fiduciary would have acted to protect and recover.

101.  Over the course of at least 2008 until the ESOP was shuttered at the end of 2017, the ESOP lost almost $37 million dollars and had a net loss of almost $4 million dollars, despite Starkey itself having its "most profitable year ever" during that time, earning estimated annual revenues of up to $850 million.

102.  ERISA § 409(a) provides that an ERISA fiduciary who breaches any duty is liable to the plan (i) for "any losses to the plan resulting from each such breach," (ii) for "any profits . . . made through use of assets of the plan by the fiduciary," and (iii) for "such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). Under basic principles of trust law, one remedy for the breaches of fiduciary duty outlined above is to restore plan participants to the position in which they would have occupied but for the breach of trust. An appropriate measure for doing so is the difference between what was paid for the stock and what would have been paid but for the breaches of fiduciary duties. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), declines in assets or stock value of the ESOP are recoverable and damages may be assessed in the amount of the stock's depreciation, in addition to other forms of recoverable damages. Plaintiffs also seek "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce

any provisions of this subchapter or the terms of the plan" pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

103.   A trustee that fails to meet ERISA § 404's prudent person standard may be held personally liable for any losses to the plan that result from the breach of duty. 29 U.S.C. § 1109(a).  Here, Fiduciary Defendants Austin, Sawalich, Ruzicka, Miller, and Nelson are each personally liable to repay the ESOP for the losses it suffered due to their breach of their fiduciary duties.

104.   The ESOP is also entitled to injunctive relief.  ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction, as well as other injunctive relief fashioned by the Court. Here, given the serious misconduct alleged, Fiduciary Defendants Austin, Sawalich, Ruzicka, Miller, and Nelson should be permanently enjoined from acting as ERISA fiduciaries or from providing direct or indirect services to an ERISA-covered plan.

## COUNT II
### ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2), § 404, 29 U.S.C. § 1109, FOR VIOLATIONS OF FIDUCIARY DUTIES ESTABLISHED BY ERISA § 404 (on behalf of Plaintiffs and the Class against Fiduciary Defendants Austin, Ruzicka, Miller, Nelson, and Sawalich)

105.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

106.   Count II arises under ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2), § 404, for violations of fiduciary duties established by ERISA § 404, 29 U.S.C. § 1104, and is asserted against Fiduciary Defendants Austin, Sawalich, Ruzicka, Nelson, and Miller.They are liable for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109.

107.   Each of the Fiduciary Defendants were ESOP trustees or administrators that owed the ESOP fiduciary duties and were required to act prudently and solely in the interest of all of the participants and beneficiaries of the ESOP, including Plaintiffs and the Class. Austin was at all relevant times a trustee of the ESOP since its formation and a fiduciary under ERISA with "discretionary responsibility in the administration" of the ESOP pursuant to 29 U.S.C. § 1002 (21)(A) and 29 U.S.C. § 1102(a)(1). Ruzicka was a trustee of the ESOP and a fiduciary under ERISA with "discretionary responsibility in the administration" of the ESOP from the formation of the ESOP until his termination in 2015. Nelson was an ESOP administrator from at least 2011 to 2013 and a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP. Miller was an ESOP administrator from at least 2010 to 2014 and a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to administer the ESOP. Sawalich has been an ESOP trustee since he was appointed by Austin in 2016 and, therefore, he is a fiduciary under 29 U.S.C. § 1102(a)(1) because he has had the authority to exercise control over the ESOP.

108.   ERISA § 404's prudent person standard is an objective standard that focuses on the fiduciaries' conduct preceding the decisions at issue.  As a result, fiduciaries breach their duties under § 404 when they act, at the time of the decision-making, without investigating all decisions that will affect the ESOP or fail to act in the best interests of the beneficiaries.

109.   As trustees or administrators of the ESOP throughout the Class Period, the Fiduciary Defendants had a duty to oversee and follow the ESOP plan terms.

110.    As noted above in more detail, from at least 2006 to September 2015, Ruzicka conspired with Nelson, Miller, Longtain, and Taylor to defraud and steal money and property from Starkey. Ruzicka did so by forming a sham company, Archer Consulting, with Taylor and using that company as a vehicle to bill Starkey for services it did not actually provide. Additionally, Ruzicka and Nelson awarded themselves and Longtain restricted stock in Starkey's subsidiary, NHC.  In doing so, they issued themselves 51% of the ownership of NHC and Starkey only 49%, diluting the value of the company by siphoning off share value that would have been used in valuing Starkey for purposes of determining the contribution to the ESOP.  Later, after having issued themselves restricted stock in NHC, Ruzicka and Nelson then paid themselves and Longtain $15,000,000 in exchange from Starkey for terminating the restricted stock grants. Ruzicka, Nelson, and Miller also stole money and property from Starkey for themselves in the form of bonuses and luxury property, including a personal Minnetonka condo and a Jaguar car.

111.    In addition, Austin mismanaged Starkey and the ESOP.  Austin failed to notice that Ruzicka had stolen over $30 million and the ESOP suffered as a result. In addition, pursuant to the terms of the ESOP Plan Documents and his role at Starkey, Austin had the authority to appoint, monitor and remove the ESOP Trustee(s) and Plan Administrator(s).

112.    Pursuant to this authority, Austin had an obligation to monitor the conduct of Ruzicka, Nelson, Taylor, and Miller, ESOP Trustees and Administrators, and to take appropriate action if and when they engaged in misconduct or otherwise violated their

fiduciary duties or failed to adequately protect the interests of the ESOP participants and beneficiaries, including the Plaintiffs and the Class.

113.   Under the circumstances described above, the Fiduciary Defendants failed to act in the best interest of beneficiaries of the ESOP and violated the ESOP Plan Documents.

114.   No prudent and loyal fiduciary would have devalued the ESOP by siphoning millions of dollars from Starkey, defrauded and stolen money from Starkey, or billed Starkey for services not provided.  No prudent and loyal fiduciary would have diluted the value of the company and the ESOP by siphoning off share value that would have been used in valuing Starkey for purposes of determining the contributions to the ESOP, or engaged in such gross mismanagement to not notice over $30 million dollars in theft for almost a decade.

115.   By engaging in the actions described above, the Fiduciary Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the ESOP solely in the interest of the participants and beneficiaries 1) for the exclusive purposes of providing benefits to participants and their beneficiaries; 2) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, and 3) in accordance with the documents and instruments governing the ESOP, all in violation of ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B), and (D).

116.   The ESOP suffered losses as a result of the Fiduciary Defendants' breach of their fiduciary duties in defrauding the plan and plan participants.  For example, between

2014 and 2015 alone, the ESOP lost nearly $15,000,000 in assets that resulted in losses to the ESOP and to plan participants.  For example, the ESOP posted losses of almost nine and a half million dollars at the end of 2008, almost two million dollars at the end of 2011, and over seven million dollars at the end of 2012.   Between 2006 and 2015, Fiduciary Defendants Ruzicka, Nelson, and Miller engaged in egregious fraudulent conduct that breached their fiduciary duties to the ESOP and all of its participants, while Fiduciary Defendants Austin and Sawalich failed entirely to engage in appropriate oversight or management.  In addition, as of 2015, when Fiduciary Defendants Austin and Sawalich discovered the fraud and their failure to conduct oversight as to the activities of the company and the other fiduciaries, they failed to engage in any conduct to make the ESOP whole. Instead, in 2015 the ESOP lost nearly $15,000,000 in assets that resulted in losses to the ESOP and to plan participants, while Austin simultaneously stated publicly that "2015 was the company's best year yet, producing $800 million in sales."   Fiduciary Defendant Sawalich continued the lack of oversight in 2016 through the conclusion of the ESOP.  The ESOP also lost nearly $2 per share in stock value between 2014 and 2015, and lost tens of millions of dollars between 2008 and 2014 that a reasonably prudent fiduciary would have acted to protect and enhance rather than looting and diminishing.

117.   Over the course of at least 2008 until the ESOP was shuttered at the end of 2017, the ESOP lost almost $37 million dollars and had a net loss of almost $4 million dollars, despite Starkey itself having its "most profitable year ever" during that time, and estimated annual revenues of up to $850 million.

118.     ERISA § 409(a) provides that an ERISA fiduciary who breaches any duty is liable to the plan (i) for "any losses to the plan resulting from each such breach," (ii) for "any profits . . . made through use of assets of the plan by the fiduciary," and (iii) for "such other equitable or remedial relief as the court may deem appropriate."  29 U.S.C. § 1109(a). Under basic principles of trust law, one remedy for the breaches of fiduciary duty outlined above is to restore plan participants to the position in which they would have occupied but for the breach of trust.  An appropriate measure for doing so is the difference between what was paid for the stock and what would have been paid but for the breaches of fiduciary duties. 29 U.S.C. § 1109(a).  Pursuant to 29 U.S.C. § 1132(a)(2), declines in assets or stock value of the ESOP are recoverable, and damages may be assessed in the amount of the stock's depreciation, in addition to other forms of recoverable damages.  Plaintiffs also seek "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

119.     A trustee that fails to meet ERISA § 404's prudent person standard may be held personally liable for any losses to the plan that result from the breach of duty. 29 U.S.C. § 1109(a).  Here, Fiduciary Defendants Austin, Sawalich, Ruzicka, Miller, and Nelson are each personally liable to repay the ESOP and the accounts of Plaintiffs and the Class for the losses suffered due to their breach of their fiduciary duties.

120.     The ESOP is also entitled to injunctive relief.  ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction, as well as other injunctive relief fashioned by the Court.

Here, given the serious misconduct alleged, Fiduciary Defendants Austin, Sawalich, Ruzicka, Miller, and Nelson should be permanently enjoined from acting as ERISA fiduciaries or from providing direct or indirect services to an ERISA-covered plan.

### COUNT III

### ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2), § 404, 29 U.S.C. § 1109, FOR VIOLATIONS OF CO-FIDUCIARY DUTIES ESTABLISHED BY ERISA § 405, 29 U.S.C. § 1105

**(on behalf of Plaintiffs and the Class against Fiduciary Defendants Austin, Ruzicka, Miller, Nelson, and Sawalich)**

121.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

122.    Count III arises under ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2), § 404, for violations of fiduciary duties established by ERISA § 405, 29 U.S.C. § 1105 and is asserted against Fiduciary Defendants Austin, Sawalich, Ruzicka, Nelson, and Miller. As fiduciaries of the ESOP, in addition to any liability for their own personal acts, Austin, Sawalich, Ruzicka, Nelson, and Miller may be held liable for the breach of fiduciary responsibility of another fiduciary with respect to the ESOP.

123.    Each Fiduciary Defendant participated knowingly in, or knowingly undertook to conceal, an act or omission of other Fiduciary Defendants, knowing such act or omission breached his own fiduciary duties under ERISA.

124.    Each Fiduciary Defendant failed to comply with ERISA § 404 in the administration of his specific responsibilities which gave rise to his status as a fiduciary, and enabled other Fiduciary Defendants to commit breaches of ERISA.

125.    Each Fiduciary Defendant had knowledge, or should have known, of breaches by the other Fiduciary Defendants, and did not make reasonable efforts to remedy such breaches.

126.    Austin, who was at all relevant times a trustee of the ESOP with "discretionary responsibility in the administration" of the ESOP pursuant to 29 U.S.C. § 1002 (21)(A) and 29 U.S.C. § 1102(a)(1), had an obligation to use reasonable care to prevent co-Trustees Ruzicka and Sawalich from committing breaches of fiduciary duties, and failed to do so. As such, each Fiduciary Defendant is liable for the breaches of fiduciary responsibilities of the other Fiduciary Defendants, ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), and/or ERISA § 405(b)(1)-(3), 29 U.S.C. § 1105(b)(1)-(3).

127.    Austin, Sawalich, Ruzicka, Miller, and Nelson are each personally liable to repay the ESOP and the accounts of Plaintiffs and the Class for the losses suffered due to their breach of their fiduciary duties.

## COUNT IV

## ACCOUNTING

128.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

129.    This Court has jurisdiction of this Count IV under Section 1332 of Title 29, USC (29 U.S.C.A, Section 1332) and the principles of pendant jurisdiction. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Specifically, this Count is limited to the equivalent relief sought pursuant to ERISA for the various breaches of fiduciary duties by the defendants.

130.   In the alternative, the Fiduciary Defendants should be Ordered to account to Plaintiffs for any and all funds in the ESOP, the contributions made to and distributions made from the ESOP, and the company valuation that formed the basis of ESOP contributions and distributions.

**COUNT V**

**CLAIM TO PIERCE THE CORPORATE VEIL AGAINST BILL AUSTIN TO HOLD STARKEY LIABLE**

131.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

132.   A court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity.  And because veil piercing is grounded in equity and intended to prevent abuse of corporate protections, courts may pierce the corporate veil to impose liability against any party who disregards the corporate form, regardless of whether the party holds an ownership interest in the entity.  Such veil piercing may be permitted under ERISA.  *Pipe Fitters Health & Welfare Tr. v. Waldo, R., Inc.*, 969 F.2d 718, 720 (8th Cir. 1992).

133.   There are eight factors to determine whether the corporate entity should be disregarded and the veil pierced: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely a facade for individual dealings.  Not all factors must be present to pierce the veil, but all are discussed herein.

134.    If the court finds several of the factors described above present, the veil should be pierced if there is an element of injustice or fundamental unfairness in allowing the corporate existence to shield individuals from liability for damages incurred by those dealing with the corporation.

135.    Starkey appears to be sufficiently capitalized for its corporate undertaking. Starkey has failed to observe corporate formalities.

136.    As Starkey's general counsel Susan Mussell has described, Starkey has failed to observe common corporate formalities and Austin employs numerous family members at Starkey. *See* Defendant Jerome Ruzicka's Motion for a New Trial as a Result of Prosecutorial Misconduct, Ex. 1 at 2, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Apr. 12, 2018), ECF No. 438-1. Starkey also has a "long history" of "doing business with third parties and companies owned by family members of executives and employees." *Id.* at 2.

137.    Starkey appears to pay dividends to Austin and the ESOP and is solvent. However, Austin himself is the only shareholder (other from the ESOP) so he siphons a vast majority of Starkey's profits. On December 31, 2013, Austin held 93.6% of Starkey's outstanding shares and the ESOP held the remaining 6.4%.  Other officers of Starkey were responsible for the day-to-day operations, and appear to be functioning, despite the fact that several of them perpetrated a multi-million dollar fraud against Starkey.

138.    Starkey lacks common corporate records and practices. At Starkey, "there was widespread reluctance to adopt written corporate policies and procedures" and it even failed to use written employment contracts. *Id.* During most or all of the class period, there was

no internal controller or auditor that reported to the board. *Id.* at 3. During most or all of the class period, Starkey had no ethical codes of conduct for directors or officers, no conflict of interest policy, no code of business conduct, and no whistleblower policy. *Id.* at 4-5. The lack of these common documents and policies indicate that Starkey failed to keep adequate records during the class period.

139.    In many respects, Starkey served as a façade for the personal dealings of its officers.  As described above, for example, former Starkey officers Ruzicka, Nelson, Miller, and Longtain used the company to transact personal business. Similarly, Austin uses the company to hire his own relatives and conduct business with family members of executives and employees. *Id.* at 2.  Examples of this include "acquisitions of businesses, commercial loans to such businesses and individual[s], retention of vendors owned by employee spouses, [and] rental payments on leases." *Id.* Austin testified at several points during the criminal trial that Austin and Starkey are "virtually indistinguishable" and that "for all practical purposes, the Starkey Corporation was Mr. Austin at the time."

140.    For these reasons, the veil should be pierced because, as Austin testified at Ruzicka's trial, he and Starkey are one and  the same. Austin is Starkey's alter-ego.

141.    The corporate veil should also be pierced here to avoid injustice or fundamental unfairness. Through Austin's mismanagement of Starkey, and according to his own sworn testimony, Austin entirely failed to notice that Ruzicka had stolen over $30 million and that the ESOP suffered as a result. As the only shareholder apart from the ESOP and the sole member on the board of directors, Austin functions as Starkey's alter-ego. The ESOP should be able to hold Starkey liable for Austin's breaches of fiduciary duty.

Although Starkey conducts legitimate business and does not merely exist for the purposes of shielding Austin from financial liability, nearly all of Starkey's profits are Austin's assets. Austin should not be able to escape liability for his own breaches of fiduciary duties to the ESOP simply by hiding his personal funds in Starkey.

142.   For these reasons, piercing the corporate veil is necessary to avoid injustice or fundamental fairness.

## COUNT VI

### CLAIM FOR DAMAGES UNDER RICO, 18 U.S.C. § 1964(c) FOR VIOLATIONS OF 18 U.S.C. §§ 1962(c) AND (d) OF RICO BY MEANS OF MAIL FRAUD
**(on behalf of Plaintiffs and the Class against Defendants Ruzicka, Nelson, Miller, Longtain, and Taylor)**

143.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

144.   Count VI is brought under RICO, 18 U.S.C. § 1964(c) and is asserted against defendants Ruzicka, Nelson, Longtain, Miller, and Taylor for violations of 18 U.S.C. §§ 1962(c) and (d).

145.   For the purposes of Count III, under 18 U.S.C. §§ 1962(c) and (d), Starkey constitutes the enterprise and is a legal entity.

146.   Each of the RICO defendants is or has been a "person" employed by or associated with Starkey. Through their employment by or association with Starkey, the RICO defendants engaged in activities that affect foreign or interstate commerce, and as such, have conducted or participated in the conduct of Starkey's affairs through a pattern of mail fraud as described above.

147.    In the course of their employment by or association with Starkey, Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor used Starkey to conduct specific instances of mail fraud, as described above and in the criminal indictment brought against Ruzicka and his co-conspirators. *See* Indictment ¶ 66, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). These instances of mail fraud were indictable under 18 U.S.C. § 1341 because the United States brought criminal indictments for violations of § 1341 against Defendants Ruzicka, Miller, Nelson, and Taylor. Defendant Longtain engaged in similar conduct that was also indictable under § 1341, as described above.

148.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor conspired together to conduct a pattern of mail fraud as described above.

149.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor are each personally liable to the ESOP for three times the damages it sustained as a result of their pattern of mail fraud. Defendants are also liable for the class members' reasonable attorneys' fees and costs of the suit.

150.    Plaintiffs respectfully request that three times all funds due and to the ESOP and in the hands of Ruzicka, Nelson, Longtain, Miller, and Taylor be transferred to the ESOP.

## COUNT VII

### CLAIM FOR DAMAGES UNDER RICO, 18 U.S.C. § 1964(c) FOR VIOLATIONS OF 18 U.S.C. §§ 1962(c) AND (d) OF RICO BY MEANS OF WIRE FRAUD
**(on behalf of Plaintiffs and the Class against Defendants Ruzicka, Nelson, Miller, Longtain, and Taylor)**

151.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

152.    Count VII is brought under RICO, 18 U.S.C. § 1964(c) and is asserted against defendants Ruzicka, Nelson, Longtain, Miller, and Taylor for violations of 18 U.S.C. §§ 1962(c) and (d).

153.    For the purposes of Count VII, under 18 U.S.C. §§ 1962(c) and (d), Starkey constitutes the enterprise and is a legal entity.

154.    Each of the RICO defendants is or has been a "person" employed by or associated with Starkey. Through their employment by or association with Starkey, the RICO defendants engaged in activities that affect foreign or interstate commerce, and as such, have conducted or participated in the conduct of Starkey's affairs through a pattern of wire fraud as described above.

155.    In the course of their employment by or association with Starkey, Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor used Starkey to conduct specific instances of wire fraud, as described above and in the criminal indictment brought against Ruzicka and his co-conspirators. *See* Indictment ¶ 68, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). These instances of mail fraud were indictable under 18 U.S.C. § 1343 because the United States brought criminal indictments for violations of § 1343 against Defendants Ruzicka, Miller, Nelson, and Taylor. Defendant Longtain engaged in similar conduct that was also indictable under § 1341, as described above.

156.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor conspired together to conduct a pattern of wire fraud as described above.

157.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor are each personally liable to the ESOP for three times the damages it sustained as a result of their pattern of wire

fraud. Defendants are also liable for the class members' reasonable attorneys' fees and costs of the suit.

158.    Plaintiffs respectfully request that three times all funds due and to the ESOP and in the hands of Ruzicka, Nelson, Longtain, Miller, and Taylor be transferred to the ESOP.

## COUNT VIII

### CLAIM FOR DAMAGES UNDER RICO, 18 U.S.C. § 1964(c) FOR VIOLATIONS OF 18 U.S.C. §§ 1962(c) AND (d) OF RICO BY MEANS OF EMBEZZLEMENT FROM AN ERISA BENEFIT PLAN
**(on behalf of Plaintiffs and the Class against Defendants Ruzicka, Nelson, Miller, Longtain, and Taylor)**

159.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

160.    Count VIII is brought under RICO, 18 U.S.C. § 1964(c) and is asserted against defendants Ruzicka, Nelson, Longtain, Miller, and Taylor for violations of 18 U.S.C. §§ 1962(c) and (d).

161.    For the purposes of Count V, under 18 U.S.C. §§ 1962(c) and (d), Starkey constitutes the enterprise and is a legal entity.

162.    Each of the RICO defendants is or has been a "person" employed by or associated with Starkey. Through their employment by or association with Starkey, the RICO defendants engaged in activities that affect foreign or interstate commerce, and as such, have conducted or participated in the conduct of Starkey's affairs through a pattern of stealing ESOP assets as described above.

163.    In the course of their employment by or association with Starkey, Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor used Starkey to conduct specific instances of stealing the Starkey ESOP's assets, as described above and in the criminal indictment brought against Ruzicka and his co-conspirators. *See* Indictment, *United States v. Ruzicka*, 16-cr-00246-JRT-SER (D. Minn. Sept. 21, 2016). This conduct is indictable under 18 U.S.C. § 664 because the Defendants stole the ESOP's assets for their own personal use.

164.    The ESOP is an employee benefit plan subject to the provisions of title I of ERISA.

165.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor conspired together to conduct a pattern of stealing ESOP funds as described above.

166.    Defendants Ruzicka, Nelson, Longtain, Miller, and Taylor are each personally liable to the ESOP for three times the damages it sustained as a result of their pattern of stealing ESOP assets. Defendants are also liable for the class members' reasonable attorneys' fees and costs of the suit.

167.    Plaintiffs respectfully request that three times all funds due and to the ESOP and in the hands of Ruzicka, Nelson, Longtain, Miller, and Taylor be transferred to the ESOP.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

A.      Certifying the Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      Finding that Defendants Austin, Ruzicka, Nelson, Miller, and Sawalich violated their fiduciary duties to ESOP participants and awarding Plaintiffs and the Class such relief as the Court deems proper;

C.      Finding that Defendants Austin, Ruzicka, Nelson, Miller, and Sawalich are liable as fiduciaries and/or co-fiduciaries;

D.      Finding that Defendants Ruzicka, Nelson, Miller, Longtain, and Taylor violated RICO by engaging in mail fraud, wire fraud, and stealing ESOP funds and awarding Plaintiffs and the Class treble damages for the losses they sustained as a result of Defendant's RICO violations;

E.      Awarding Plaintiffs' counsel attorneys' fees, reimbursement of out-of-pocket litigation expenses, expert witness fees, and other costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), RICO § 402, 18 U.S.C. § 1964(c), and/or the common fund doctrine; and

F.      Awarding compensatory damages, disgorging profits wrongfully made, and awarding equitable relief, as well as such other and further relief, including prejudgment interest, as indicated above and that the court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 3, 2019                    **LOCKRIDGE GRINDAL NAUEN, PLLP**

By:  *s/ Kate M. Baxter-Kauf*
    Gregg M. Fishbein, No. 202009
    Kate M. Baxter-Kauf, No. 392037
    Arielle S. Wagner, No. 398332
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401-2159
Tel: 612-339-6900
Fax: 612-339-0981
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com
aswagner@locklaw.com