## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jaime Beck, Byron Hanson, and Lynn Melcher, individually and on behalf of all others similarly situated, | Civil Action No. 19-CV-01453 (PJS/ECW) |
| Plaintiffs, | |
| v. | |
| William F. Austin, Brandon Sawalich, Jerome Ruzicka, Scott A. Nelson, Lawrence W. Miller, W. Jeffrey Taylor, Jeffrey Longtain, and Starkey Laboratories, Inc., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN

Plaintiffs Jaime Beck, Byron Hanson, and Lynn Melcher (the "Settlement Class Representatives") and the Class they represent have reached a settlement with Defendant Starkey Laboratories, Inc. to resolve all claims in this litigation against Starkey, as well as those asserted against named Defendants William F. Austin, Brandon Sawalich, Jerome Ruzicka, Scott A. Nelson, Lawrence W. Miller, and Jeffrey Longtain arising out of fraud and fiduciary breaches alleged to have occurred since 2006.  Plaintiffs and the Class have also reached a settlement with Defendant W. Jeffrey Taylor, which would obviate the Application for Entry of Default entered by the Clerk for Mr. Taylor on March 8, 2021 (ECF No. 115) and resolve all claims in the pending litigation.  Plaintiffs and the Class

557112.7

will benefit from the additional $183,000 Settlement Amounts, and from the additional injunctive relief provided by the Settlement regarding distribution of funds from the previous Horizon Settlement and Release.  The settlement provides significant relief to Settlement Class Members and lies well within the range of reasonableness necessary to establish Final Approval under Rule 23(e).  The Court should, therefore: (1) certify the Settlement Class for purposes of settlement; (2) appoint Jaime Beck, Byron Hanson, and Lynn Melcher as Settlement Class Representatives; (3) appoint the undersigned counsel as Class Counsel; (4) grant preliminary approval of the proposed Settlement; (5) approve the proposed form and manner of notice to the Settlement Class; (6) direct that notice to the Settlement Class be disseminated in the manner described in the Settlement and the Notice Plan, including information that Plaintiffs intend to request payment of Service Awards in the amount of $4,000 per Settlement Class Representative and attorney's fees and costs not to exceed the amount of $46,250; and (7) set the proposed schedule for completion of further settlement proceedings, including a deadline for Settlement Class Members to request exclusion from the Settlement Class or file objections to the Settlement, and scheduling the Final Approval Hearing.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2021, Plaintiffs entered into a Settlement Agreement and Release ("Settlement" or "Starkey Settlement") with Defendant Starkey Laboratories, Inc. ("Starkey" or the "Settling Defendant").[1]  The Settlement resolves all claims against

---

[1] The Settlement is attached as Exhibit A to the Declaration of Kate M. Baxter-Kauf in Support of the Plaintiffs' Amended Motion for Preliminary Approval of Class Action

Starkey, as well as those asserted against Defendants Austin, Sawalich, Ruzicka, Nelson, Miller, and Longtain asserted in Plaintiffs' Amended Complaint (ECF No. 9) on behalf of the Class.  Starkey will pay a Settlement Amount of $173,000 to the ESOP to be distributed to Settlement Class Members by independent fiduciary Horizon Bank (Ex. A ¶¶ 5, 8), and will permit Plaintiffs' Counsel to work with Horizon Bank regarding allocation of both the Settlement and the Horizon Settlement and Release (Ex. A ¶ 8). Pursuant to the Starkey Settlement, Class Counsel will also seek via separate motion attorney's fees and costs up to a court-approved amount of $46,250 and service awards for the three Settlement Class Representatives up to a court-approved amount of $12,000 in the aggregate, to be paid separately by Starkey.  Ex. A ¶ 5. Class Counsel will notify Settlement Class Members; Horizon Bank will distribute the Settlement if approved; and Starkey will pay the reasonable expenses of the administration of the Settlement Amount. Ex. A ¶¶ 8-11.

On May 17, 2021, Plaintiffs entered into a Settlement Agreement and Release ("Taylor Settlement") with the then-only outstanding individual Defendant, W. Jeffrey Taylor ("Taylor").[2]  The Taylor Settlement resolves all claims against Taylor asserted in Plaintiffs' Amended Complaint (ECF No. 9) on behalf of the class.  Taylor will pay a Settlement Amount of $10,000 to the ESOP be distributed to Settlement Class Members by independent fiduciary Horizon Bank in conjunction with the Starkey Settlement (Ex. C

---

Settlement and Notice Plan ("Baxter-Kauf Decl.").   All capitalized terms in this memorandum have the meanings attributed to them in the Settlement.

[2] The Taylor Settlement is attached as Exhibit C to the Baxter-Kauf Declaration.  All capitalized terms in this memorandum have the meanings attributed to them in the Taylor Settlement, but Plaintiffs have attempted to be clear when differentiating between the two settlements.

¶¶ 5, 8-9).  Class Counsel will not seek any separate attorney's fees, costs, or service awards from the Taylor Settlement.  Ex. C ¶ 5 and at 6.  There is no separate notification process; Settlement Class Members will be notified as outlined above for the Starkey Settlement. Ex. C ¶¶ 9-11.

### A.  The Benefits the Settlement Provides

Both the Settlement and the Taylor Settlement define the Settlement Class as: "All persons who are or were participants in, or beneficiaries of, the Starkey Laboratories, Inc. Employee Stock Ownership Plan at any point during the class period. The class begins on January 1, 2006 and continues through December 31, 2017."  Ex. A ¶ 3; Ex. C ¶ 3. "Excluded from the class are the Court, Defendants, and the Releasees, as defined" in the Settlement.  Ex. A ¶¶ 3, 17; Ex. C ¶¶ 3, 13.  Under the proposed settlement, Starkey agrees to pay a total of $173,000 to the ESOP to be distributed to Settlement Class Members by independent fiduciary Horizon Bank.  Ex. A ¶¶ 5, 8.  Taylor agrees to pay $10,000 to the ESOP to be distributed to Settlement Class Members by independent fiduciary Horizon Bank.  Ex. C ¶¶ 5, 8-9.  In addition, neither Starkey nor Taylor will object to Plaintiffs' Counsel consulting with Horizon Bank regarding allocation of both the Settlement and the previously-entered Horizon Settlement and Release.  Ex. A ¶ 8; Ex. C ¶ 8.  The monetary relief will be distributed by Horizon Bank to all class members who do not exclude themselves from the settlement.  Ex. A ¶¶ 8-9, 13, 15; Ex. C ¶¶ 8-9.  No portion of the Settlement Amount will revert back to Starkey unless the Settlement is not Court approved. Ex. A ¶ 2; Ex. C ¶ 2.  The Settlement's finality is not dependent on the Court awarding attorneys' fees and expenses to Class Counsel.  Ex. A ¶¶ 3, 19 (providing that payment of

fees is contingent upon order of the Court upon Class Counsel's separate application); Ex. C at 6 (noting that Class Counsel does not contemplate recovery of attorney's fees, costs, and expenses for Class Counsel beyond those negotiated in the Starkey Settlement).

In exchange for the consideration above, Plaintiffs and the Class members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Starkey and the other Releasees from any claims arising from or related to the fiduciary breaches or other claims at issue in this litigation (the "Released Claims"). Ex. A ¶ 17; Ex. C ¶ 13.

### B.  The Notice and Administration Plans

Because the class at issue in this case involves participants in, or beneficiaries of, the Starkey Laboratories, Inc. Employee Stock Ownership Plan, a defined group of people for which Starkey has records, and because distributions for the Horizon Settlement and Release require communication with ESOP participants and beneficiaries unrelated to the Settlement, Class Counsel does not believe that a third-party Settlement Administrator is necessary. *See* Baxter-Kauf Decl. ¶ 12.  Instead, the Settlement provides that Starkey will provide physical address and e-mail information to Class Counsel for all class members, and Class Counsel will contact Settlement Class Members via email and mail. *Id.*; Ex. A ¶¶ 9-11.  As explained further herein, the notice will clearly and concisely inform Settlement Class Members that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or object by following procedures outlined in the notice.  Baxter-Kauf Decl. ¶¶ 14-15; Ex. A ¶¶ 9-15.   A copy of both the short and long form notices to be sent via first-class

mail or email to Settlement Class Members are attached as Exhibits D (long form notice) and E (short form notice) to the Baxter-Kauf Declaration.

Finally, if and when the Settlement is finally approved, Horizon Bank will be responsible for accounting for distribution of the Settlement Amounts from both Starkey and Taylor to Settlement Class Members who have not excluded themselves, determining necessary eligibility, and for disbursing funds transferred to Horizon Bank by Starkey.  Ex. A. ¶ 5.  Class Counsel, in consultation with Starkey and Horizon, will report to the Court that notice obligations have been satisfied.  Ex. A. ¶ 10.

### C. History of the Litigation

On June 3, 2019, Jaime Beck, Byron Hanson, and Lynn Melcher, individually and on behalf of similarly situated individuals (collectively with the Settlement Class, the "Plaintiffs"), filed suit, alleging claims against Starkey Laboratories, Inc., and individual defendants William F. Austin, Brandon Sawalich, Jerome Ruzicka, Scott A. Nelson, Lawrence W. Miller, W. Jeffrey Taylor, Jeffrey Longtain.  ECF No. 1.  Plaintiffs alleged fiduciary duty violations under ERISA, 29 U.S.C. § 1104(a)(1) and § 1105(a)(1)-(3), and— only against Defendants Ruzicka, Nelson, Miller, Taylor, and Longtain—violations of RICO, 18 U.S.C. §§ 1962 (c) and (d).  *Id.*  These claims arose from internal thefts that took place at Starkey starting, as alleged in the complaint, as early as 2006.  *Id.*  Plaintiffs, like the proposed class of Starkey ESOP beneficiaries and participants, alleged that the value of their ESOP shares had been damaged as a result of the claims alleged, and requested injunctive and monetary relief.  *Id.*

Unbeknownst to Plaintiffs and the Settlement Class, on May 7, 2019, Horizon Bank, in its capacity as the independent trustee for the Starkey Laboratories, Inc. Employee Stock Ownership Plan and the Starkey Laboratories, Inc. Employee Stock Ownership Trust (collectively the "ESOP"), on its behalf and "on behalf of the ESOP and all current and former participants and beneficiaries of the ESOP," entered into a settlement with Starkey that purported to settle and release "any and all causes of action" the ESOP had or might have against Starkey and William F. Austin ("Austin"), as well as "any and all causes of action" against Starkey's "past and current directors, officers, employees, subsidiaries, affiliates, shareholders, attorneys, agents, predecessors, successors, assigns, and insurers." After learning this information, Plaintiffs filed an Amended Complaint, on July 30, 2019, asserting that the Horizon Settlement and Release was invalid.  ECF No. 9.

Starkey, Austin and Sawalich (the "Starkey Defendants") moved to dismiss the Amended Complaint as barred by the Horizon Settlement and Release, among other reasons, on September 13, 2019.  ECF No. 38.  That motion was briefed and then heard on December 18, 2019.  *See* ECF No. 57.  By Order dated August 4, 2020, this Court dismissed some of Plaintiffs' claims and allowed Plaintiffs "strictly limited" discovery only on the issue of whether the Horizon Settlement and Release complied with PTE 2003-39.  *See* ECF No. 60.  In doing so, the Court noted that "[i]In short, in the settlement agreement, the ESOP released just about everyone who could conceivably be held liable to it from just about every claim that the ESOP could conceivably pursue.  In return for the broad release, the ESOP was paid $800,000 by Starkey. . . . Plaintiffs do not dispute that all of their claims . . . fall within the scope of the release . . . ."  *Id.* at 8.  The Court then denied the Starkey

Defendants' motion that the claims against them should be dismissed as barred by the Horizon Settlement and Release.  *Id.*  at 12.  But the Court noted it would order bifurcated discovery "[i]n order to spare the parties from incurring considerable expense of engaging in full discovery on the merits of claims that appear to have been released—and recognizing that Starkey paid $800,000 to the ESOP so that the defendants would not have to bear the costs of litigating claims brought on behalf of the ESOP."  *Id.* at 12.

As a result, the Parties engaged in discovery.  Starkey, Austin, and Sawalich filed an Answer to Plaintiffs' Amended Complaint on September 1, 2020.  ECF No. 86.  The Parties negotiated and electronically filed a Stipulation for Protective Order on September 30, 2020.  ECF No. 101.  Plaintiffs and Class Counsel served written discovery on Defendants Starkey, Austin and Sawalich, which resulted in the production of 3,609 pages of documents on the issue of the Horizon Settlement and Release that Class Counsel reviewed and analyzed.  Baxter-Kauf Decl. ¶ 5; Ex. A at 6.  Class Counsel also issued subpoenas to third-parties Horizon Bank, Chartwell Financial Advisory, Inc., The ERISA Fiduciary Group, LLC ("EFG") and Censeo Advisors, LLC, which resulted in the production of an additional 11,521 pages of documents on the issue of the Horizon Settlement and Release that Class Counsel reviewed and analyzed.  Baxter-Kauf Decl. ¶ 5; Ex. A at 6.  In addition, Plaintiffs noticed 6 fact depositions to be completed by the fact discovery deadline, including depositions of 4 Starkey witnesses and 1 witness each from Horizon and EFG, with which the Parties were prepared for move forward and Class Counsel were prepared to conduct pending potential motion practice and disputes about the proper scope of the notices.  Baxter-Kauf Decl. ¶ 6; Ex. A at 6.

### D.  Negotiations and Settlement

The proposed settlement is the result of good faith, arm's-length settlement negotiations after a full document discovery period and preparation for deposition discovery.  Baxter-Kauf Decl. ¶¶ 5-11; Ex. A at 6-7.  Class Counsel negotiated bilaterally with the Starkey Defendants starting in December 2020, after each determined independently that it might be desirable and beneficial to settle, compromise, and resolve their disputes in the manner and on the terms and conditions ultimately set forth in the Settlement Agreement, in order to avoid the costs, inconvenience and uncertainty of continued litigation.  *Id.*  The negotiation involved the exchange of emails and telephone calls, and counsel participated in several direct discussions about the resolution of the Action over the course of almost a full month, and also exchanged relevant information and discussed their respective positions as to liability and damages.  *Id.*  As part of their negotiations, the Class Counsel and the Starkey Defendants engaged in a status conference with Magistrate Judge Elizabeth Cowan Wright, followed by additional, direct discussions about the resolution of the Action and Claims.  Baxter-Kauf Decl. ¶ 9; Ex. A at 7.

Class Counsel and the Starkey Defendants did not negotiate attorneys' fees, costs, and expenses prior to agreeing to the essential terms of the Settlement.  Baxter-Kauf Decl. ¶ 11; Ex. A at 7.  In addition, Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in the Settlement and how best to serve the interests of the Settlement Class.  Baxter-Kauf Decl. ¶¶ 7, 16; Ex. A at 7.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues

involved, the risks, uncertainty, and cost of further prosecution of the Litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Settlement, that a settlement with the Settling Defendant on the terms set forth in this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. Baxter-Kauf Decl. ¶¶ 5-11, 16; Ex. A at 7. While the Starkey Defendants deny all material allegations in the Amended Complaint, they have agreed to the Settlement. Ex. A at 7-8. As a result, the Starkey Settlement was memorialized the agreement in principle in a Term Sheet on January 26, 2021, and on March 11, 2011, Plaintiffs and Starkey entered into the final Settlement Agreement that they now ask the Court to approve. Ex. A at 8, 23-24.

Contemporaneously with these negotiations, Plaintiffs also filed an application for entry of default against the only Defendant for which the Starkey Settlement would not resolve claims, W. Jeffrey Taylor. *See* ECF No. 60 (noting that Defendant Taylor's claims are not barred by the Horizon Settlement and Release); ECF Nos. 113-14 (application for entry of default and accompanying affidavit); Baxter-Kauf Decl. ¶ 19. Plaintiffs' Application for Entry of Default for Mr. Taylor was entered by the clerk on March 8, 2021. ECF No. 115. As part of the preparations to file a default motion, Class Counsel continued to serve all pleadings and the Entry of Default on Mr. Taylor. Baxter-Kauf Decl. ¶ 19. On March 24, 2021, Defendant Taylor reached out to Class Counsel and indicated he was aware of pleadings and would be retaining counsel. *Id.* Thereafter, Class Counsel spoke with counsel for Mr. Taylor on April 2 and 15, 2021, and each determined independently that it might be desirable and beneficial to settle, compromise, and resolve their disputes in the manner and on the terms and conditions ultimately set forth in the Taylor Settlement

in order to avoid the costs, inconvenience and uncertainty of continued litigation. *Id.* ¶¶ 8-9, 19. The negotiation involved the exchange of emails and telephone calls and direct discussions about resolution of the Action, potential liability, and risks of recovery and ability to collect a judgment. *Id.* ¶¶ 8-9; Ex. C at 5-6. While Defendant Taylor denies all material allegations in the Amended Complaint, he has also agreed to the Taylor Settlement. Ex. C at 6. As a result, the Taylor Settlement was memorialized via email on May 6, 2021, and on May 17, 2021, Plaintiffs and Taylor entered into the final Settlement Agreement that they now ask the Court to approve. Baxter-Kauf Decl. ¶ 9; Ex. C at 6-7, 16-17.

## II.   DISCUSSION

### A.  The Proposed Settlement Meets The Standards For Preliminary Approval

Parties settling a class action must seek court approval of the settlement. Fed. R. Civ. P. 23(e). Rule 23(e) contemplates a sequential process for courts evaluating class action settlements. First, the Court must determine whether a class should be certified for settlement purposes. *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). Second, the Court must consider whether to approve a settlement preliminarily and order that notice be provided to the class. At this preliminary approval stage, the Court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993). Third, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide

whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

This Court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in the class action context. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, *6 (D. Minn. Oct. 18, 2012).

### B. The Settlement Class Satisfies the Requirements for Class Certification at the Settlement Stage.

Plaintiffs have the burden of demonstrating satisfaction with all of the applicable requirements of Rule 23. *In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and of both Rule 23(b)(2) (conduct affecting the class as a whole where

declaratory relief is sought) and Rule 23(b)(3) (predominance and superiority).  The Court need only find that *either* Rule 23(b)(2) or Rule 23(b)(3) is satisfied to warrant granting preliminary approval.  *See Smith v. United HealthCare Servs., Inc*., No. CIV 00-1163 ADM/AJB, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002) ("[A]a party seeking class certification must satisfy one of the requirements of Rule 23(b)."); *see also Harju v. Olson*, 709 F. Supp. 2d 699, 735 (D. Minn. 2010) (finding certification of Rule 23(b)(2) class appropriate in ERISA action); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 342 (S.D. Iowa 2013) (finding certification of Rule 23(b)(2) class appropriate for injunctive RICO claim and Rule 23(b)(3) class appropriate for damages claims).

Here, Plaintiffs seek certification of a Settlement Class consisting of: "All persons who are or were participants in, or beneficiaries of, the Starkey Laboratories, Inc. Employee Stock Ownership Plan at any point during the class period.  The class begins on January 1, 2006 and continues through December 31, 2017."  Ex. A ¶ 3.  "Excluded from the class are the Court, Defendants, and the Releasees, as defined" in the Settlement. Ex. A ¶ 3, 17.  The Settlement Class is the same in both the Starkey Settlement and the Taylor Settlement.   As detailed herein, this proposed Settlement Class meets the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2) and 23(b)(3).

### 1. *Rule 23(a) Requirements*

First, the Settlement Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation).  As an initial matter, the proposed Class consists of approximately 4,000 current and former participants and

beneficiaries of the Starkey ESOP.  Baxter-Kauf Decl. ¶ 13.  This far exceeds numerosity's

minimum requirements.  Rule 23(a)(2)'s commonality requirement mandates that there be

"questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement

is met when there is "at least one issue whose resolution will affect all or a significant

number of the putative class members."  *Williams v. Mohawk Indus.*, *Inc.*, 568 F.3d 1350,

1355 (11th Cir. 2009).  For purposes of Rule 23(a)(2), the Supreme Court has emphasized

that "even a single (common) question will do."  *Wal-Mart Stores, Inc. v Duke*, 564 U.S.

338, 359 (2011) (internal citation omitted).  Here, numerous questions of law and fact will

determine whether liability is appropriate for the ERISA or RICO claims and injunctive

or damages-based relief due to the Settlement Class.  In particular, the application of the

Horizon Settlement and Release is an issue that affects all class members, and Plaintiffs'

ERISA and RICO claims allege a course of conduct by some or all named Defendants that

will be determined by their actions or inactions, and whether those actions or inactions

affected the ESOP as a whole.  Common evidence will dictate the resolution of every

Settlement Class member's claim.

 Rule 23(a)(3) requires that the claims of the class representatives be typical of those

of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement asks whether plaintiffs'

claims "arises from the same event or practice or course of conduct that gives rise to . . .

the same legal theory" and "have the same essential characteristics" as the claims of other

class members.  *See, e.g.*, *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232

(11th Cir. 1983).  The requirement is not demanding, *In re Disposable Contact Lens Anti.*

*Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class.  Here, all three proposed Settlement Class Representatives are former ESOP participants, and their participation in the ESOP covers the entirety of the class period.  Their claims are typical of the Settlement Class: they arise from the same allegations, and are based on the same legal theories under ERISA and RICO.  Further, the Settlement Class Representatives and the Settlement Class Members' injuries are all connected to same tortious conduct because all claims arose from the same transactions and events beginning in 2006 alleged in the Amended Complaint (ECF No. 9), Plaintiffs' claims are not atypical.  Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In assessing the adequacy requirement, courts utilize "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation."  *Columbus Drywall*, 258 F.R.D. at 555.  Here, the Settlement Class Representatives do not have any interests antagonistic to other Settlement Class Members and have retained lawyers who are abundantly qualified and experienced in class actions generally, and in ERISA cases specifically.  Baxter-Kauf Decl. ¶¶ 17-18 & Ex. B.  Accordingly, the requirement is met and the Court should appoint Lockridge Grindal Nauen P.L.L.P. as Class Counsel.

       2.  *Rule 23(b)(2) Requirements*

Second, the proposed Settlement satisfies the requirements of Rule 23(b)(2).  After establishing all of the Rule 23(a) requirements, plaintiffs seeking certification must show the proposed class satisfies at least one subsection of Rule 23(b).  Fed. R. Civ. P. 23(b).  Pursuant to the Settlement Agreement, Plaintiffs seek provisional certification pursuant to Rules 23(b)(2) and 23(b)(3).  Ex. A at 10.  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Certification under Rule 23(b)(2) requires a plaintiff to show that defendants engaged in a "course of conduct" that was "generally applicable to the proposed class" and that they seek "predominantly injunctive relief rather than monetary damages."  *Smith*, 2002 WL 192565, at \*4-\*5.  Because of the nature of ERISA cases, "courts have certified ERISA classes pursuant to Rule 23(b)(2) where the plaintiffs alleged a course of conduct generally applicable to the class and sought monetary relief secondary to their request for declaratory and injunctive relief."  *Id.* at \*5 (citing *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001); *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 603 (E.D. Mich. 1996); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1022, 1028 (N.D. Iowa 1986)).

Here, Plaintiffs allege that the Defendants engaged in a common course of conduct that was generally applicable to the entire class because it affected the ESOP as a whole rather than affecting any specific plaintiff individually.  Plaintiffs sought both injunctive and declaratory relief with respect to class members' rights under the ESOP.  Plaintiffs'

request for monetary relief incidental to the injunctive and declaratory relief does not preclude class certification, and thus, certification under Rule 23(b)(2) is appropriate. To the extent that monetary damages are separable for Plaintiffs' RICO or ERISA claims, certification under Rule 23(b)(3) is appropriate, and courts have found no conflict in certifying both. *See, e.g.*, *Huyer*, 295 F.R.D. at 342.

### 3.  *Rule 23(b)(3) Requirements*

Third, the proposed Settlement also satisfies the requirements of Rule 23(b)(3) (predominance and superiority).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).  Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

bringing about other undesirable traits." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (alteration in original).

Here, the common questions of law and fact pertaining to Plaintiffs' ERISA and RICO claims predominate. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Settlement Class Members. *See, e.g.*, *Smith*, 2002 WL 192565, at *5 (D. Minn. Feb. 5, 2002); *Huyer*, 295 F.R.D. at 342. All of the elements of the ERISA and RICO claims can be resolved on a class-wide basis. First, there is the legal question affecting all Settlement Class members as to whether each of the named Defendants breached their fiduciary duties to the Settlement Class, which is common to all current and former ESOP participants and beneficiaries. Second, the question of whether the RICO defendants engaged in activities that affect foreign or interstate commerce, and as such, conducted or participated in the conduct of Starkey's affaires through a pattern of mail or wire fraud affects all Settlement Class Members. Causation of losses to the ESOP under ERISA or damage to the ESOP under RICO also present a common issue because the Class would uniformly show the relationship between the conduct alleged and losses suffered by the ESOP, causing Plaintiffs and the Class harm. The fact that the complaint alleges losses suffered by the Starkey ESOP, a financial instrument with shares and values calculated on a uniform basis, rather than any individual claim for a particular Starkey employee or Class Member means that common issues overwhelmingly predominate over any remaining individualized issues.

Under Rule 23(b)(3), a court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (internal quotations omitted).  Litigating the same claims of thousands of class members and requiring presentation of the same evidence and expert opinions each time is obviously inefficient.  Here, the allegations of ERISA fiduciary breaches and RICO violations affected thousands of current and former ESOP members located in Minnesota and across the United States. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation and therefore will promote judicial economy and efficiency. This is especially true given the arguments related to the release of the claims in the Horizon Settlement and Release.  Any award that any individual Settlement Class Member might be able to recover would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, superiority is satisfied.

### C. The Proposed Settlement Is The Result Of Arm's-Length Negotiations Among Experienced Counsel.

Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery."  *Grier v. Chase Manhattan Auto Fin. Co*., No. Civ. A.99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l*

*Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993). "The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel).  Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.  *See, e.g.*, *In re Employee Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .' ") (citation omitted).

Here, the Parties have had ample opportunity to test and refine their legal theories through investigation, research, and a period of discovery focused on the Horizon Settlement and Release to assess the merits of claims and defenses, to evaluate the likelihood that the case would proceed beyond initial dispositive motion practice, and to balance the potential value of Settlement Class Members' claims against prior settlements and the substantial risks and expense of trial.  In addition, the Starkey Defendants and third-parties have produced sufficient documents to allow Class Counsel to assess the value and

strength of their RICO claims against Mr. Taylor and balance the likelihood that the case would proceed through dispositive motions and trial and to balance the potential value of Settlement Class Members' claims against the likelihood of both recovery on their claims and their ability to collect a judgment.

The Parties conducted settlement negotiations in two separate nearly month-long processes that involved several phone calls and emails, and ultimately, for the Starkey Settlement, magistrate judge involvement. The proposed settlements are the result of good faith, arm's-length settlement negotiations after a full document discovery period and preparation for deposition discovery.  Baxter-Kauf Decl. ¶¶ 5-11; Ex. A at 6-7.  Plaintiffs and the Starkey Defendants exchanged discovery and documents to help them facilitate informed arm's length negotiations and productive settlement talks for both settlements. Plaintiffs faced significant risks and challenges in continued litigation.  The parties negotiated bilaterally starting in December 2020, as described above, and then again starting in April 2021, in order to potentially avoid the costs, inconvenience and uncertainty of continued litigation.  *Id.*  Class Counsel recommends, for the Court's consideration, preliminary approval of the Settlements because they are well within the range of possible approval and is fair, reasonable and adequate and in the best interests of the Settlement Class.  Baxter-Kauf Decl. ¶¶ 5-11, 16.

When, as here, the parties are represented by experienced counsel and rigorous negotiations were conducted at arm's length, the judgment of the litigants and their counsel concerning the adequacy of the Settlement may and should be considered. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d

1171, 1178 (8th Cir. 1995). The extent of the negotiations conducted by Class Counsel and Starkey's Counsel, the negotiations conducted by Class Counsel and Taylor's Counsel, Class Counsel's experience litigating complex class actions, the arm's-length nature of the settlement negotiations, all weigh in favor of preliminary approval of the Settlement.

### D.  The Proposed Settlement Satisfies the Standard for Preliminary Approval.

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (citation omitted).  Courts consider four factors in determining whether a proposed settlement is fair, reasonable and adequate for purposes of final *approval:* (1) the merits of plaintiffs' case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.[3]  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (citing *Grunin*, 513 F.2d at 124); *Van Horn*, 840 F.2d at 607; *Dryer v. Nat'l Football League*, Civ. No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *2 (D. Minn. 2013).  Thus, at this stage, the

---

[3] Courts do not consider this factor until notice has been given to Settlement Class members. *See, e.g.*, *Columbus Drywall Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

Court's task is to determine whether the settlement is in the range of possibly meeting these factors.

In the present case, the Settlements reflect both the strengths and weaknesses of the parties' claims and defenses. The Settlements provide significant benefits to the Settlement Class. The Settlements will provide additional funds to the ESOP for Settlement Class Members and allow Class Counsel to have input into the distribution of the Horizon Settlement and Release. The Settlement Amounts will be distributed by Horizon, the ESOP fiduciary, after careful assessment of appropriate allocation of the Settlement Amounts, with no input from Defendants. Ex. A at 11. No Settlement Class Member will need to fill out a claim form, and no portion of the Settlement Amounts will revert to any named Defendant. At the same time, the Settlements reflect the challenges that Plaintiffs faced in surviving dispositive motion practice on the validity of the Horizon Settlement and Release.

There is no concern that Starkey will be unable to pay the full Settlement Amount. Plaintiffs did take into account the ability of Defendant Taylor to pay a judgment in the litigation, should one be obtained, given his prior restitution to Starkey, time served in relation to the criminal action, and financial position. Baxter-Kauf Decl. ¶¶ 8-9. In addition, the complexity and expense of further litigation loom quite large in this case. *See* Baxter-Kauf Decl. ¶ 8. In order to continue the litigation, Plaintiffs would need to take the six depositions noticed, at least one of which was likely to involve motion practice on the appropriateness of deposing Starkey's counsel of record in this case, who previously represented Starkey in connection with the Horizon Settlement and Release. *Id.* Then,

Plaintiffs would need to survive dispositive motions on whether their claims had been released, requiring expert testimony and analysis of the appropriateness of the Horizon Settlement and Release and evaluation of Prohibited Transaction Exemption 2003-39—a rule only rarely discussed the federal case law. *Id.* If Plaintiffs prevailed on such motions, they would be followed by an entirely separate second fact discovery period and then a second round of experts on liability and damages. *Id.* Preparing for a contested trial, not to mention class certification and expert analysis of damages, would involve considerable expense and risk. *Id.* Similarly, trial establishing liability would also be heavily expert-driven. *Id.* In addition, as it specifically regards the Taylor Settlement, Plaintiffs would need to prosecute the whole case against Mr. Taylor, take extensive discovery, survive dispositive motions on substantive claims that may require expert testimony regarding the RICO claims asserted, and face considerable risks regarding both the likelihood of recovery as well as the ability to collect a judgment. *Id.* Plaintiffs also faced considerable logistical hurdles in negotiating and administering two separate settlements for Settlement Class Members and considered the efficiencies to be gained in using one process for all payments. *Id.* For these reasons, Class Counsel urge the Court to find that the proposed Settlement is within the range of reasonableness warranting notice to Class Members and should be preliminarily approved. *Id.* ¶¶ 7, 16.

### E.  The Proposed Settlement Meets the Requirements of PTE 2003-39.

Under ERISA, a transaction between the Plan and a party in interest is a prohibited transaction unless a statutory or regulatory exemption is met. 29 U.S.C. § 1106(a)(1)(A); 29 U.S.C. § 1106(a)(1)(D).  Here, Plaintiffs respectfully submit that (1) neither settlement

is prohibited given Rule 23, PTE 2003-39, and ERISA; (2) PTE 2003-39 does not impose duties on this Court beyond Rule 23; and (3) any necessary analysis of PTE 2003-39 is properly done at final and not preliminary approval.

As an initial matter, neither Settlement is a prohibited transaction under ERISA. It is unquestioned that the Taylor Settlement is not an ERISA settlement and thus cannot be a prohibited transaction pursuant to ERISA. *See* ECF No. 9 ¶¶ 149-173 (asserting only RICO claims against Taylor, who was never a Starkey fiduciary or employee). Mr. Taylor is not and has never been a fiduciary of the plan, and is not a party in interest as that term is defined by ERISA. *See* 28 U.S.C. § 1002(14) (defining party in interest). Furthermore, PTE 2003-39 suggests an exemption in cases where "the case has been certified as a class action by the court." PTE 2003-39, 68 FR 75632-01, 2003 WL 23091419(F.R.) at *75638. In such circumstances, there is an exemption from the requirements of PTE 2003-39 and the need to have an independent fiduciary review a settlement. Here, where the Court has been asked first to certify a settlement class and the Rule 23 factors are met, the proposed settlement has undergone rigorous analysis by the court both as to the certification of the class and upon court review both for preliminary approval and at final approval. The Court's analysis eliminates the need to have an independent fiduciary make the same type of determinations that a court does in determining that the settlement is fair and reasonable.

Second, ERISA prohibits a *fiduciary* from "caus[iing] the plan to engage in a transaction" that is a "sale or exchange, or leasing, of any property between the plan and a party in interest," or that is a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A); 29 U.S.C. § 1106(a)(1)(D). It does

not impose duties upon *this Court* beyond the preliminary and final approval requirements of Rule 23.  This is consistent with the fact that courts routinely approve ERISA settlements without any mention of PTE 2003-39 or an independent fiduciary.  *See, e.g.*, <u>Gatto v. Sentry Servs., Inc</u>., No. 13 CIV. 5721 RMB GWG, 2014 WL 7338721, at *1 (S.D.N.Y. Dec. 19, 2014); <u>In re Worldcom, Inc. ERISA Litig</u>., No. 02 CIV. 4816 (DLC), 2005 WL 3107725, at *1 (S.D.N.Y. Nov. 21, 2005).

The parties to a proposed settlement do, at times, negotiate submission of a proposed settlement to an independent fiduciary as part of the settlement proposed to the Court for approval, and, in such circumstances, courts use the information provided by the independent fiduciary as part of the final approval Rule 23 analysis.  *See, e.g.*, <u>In re Eastman Kodak ERISA Litig</u>., No. 6:12-CV-06051-DGL, 2016 WL 9456376, at *2 (W.D.N.Y. Oct. 4, 2016); <u>In re Textron, Inc. ERISA Litig.</u>, No. CIV.A. 09-383-ML, 2014 WL 2766777, at *2 (D.R.I. Feb. 10, 2014).  As a result, the Court should consider the decision of whether to engage an independent fiduciary as part of a proposed settlement a decision of risk to be made by the parties and the fiduciary rather than a court or Department of Labor requirement subject to separate analysis.  Here, any fiduciary obligations under PTE 2003-39 must be met by Horizon Bank, as plan fiduciary and acting as "a current fiduciary who is not a party to the action and who is not so closely allied with a party (other than the plan) as to create a conflict of interest."  *See* 68 FR 75632-01, 2003 WL 23091419(F.R.) at *75635.  Horizon Bank, along with a second independent fiduciary, EFG, have already made a determination that a *lower settlement* than the one contemplated by Plaintiffs' request, would satisfy the requirements of PTE 2003-39.  It would be an

unnecessary formality to require further independent fiduciary review of this larger settlement amount.  As a result, PTE 2003-39 presents no bar to this Court approving the proposed settlements pursuant to Rule 23.

Third and finally, should the Court determine that additional PTE 2003-39 analysis by a fiduciary other than Horizon Bank is warranted, imposing such a requirement at the preliminary-approval stage would be premature.  As a practical matter, PTE 2003-39 has already been satisfied, as noted above.  In addition, all of the case law of which class counsel is aware analyzing PTE 2003-39 in the class-settlement context has occurred at the final approval stage, after notice and exclusions have permitted the fiduciary and the plan to determine allocations.  *See, e.g.*, *Eastman Kodak ERISA Litig.*, 2016 WL 9456376, at *2; *In re Textron, Inc. ERISA Litig.*, No. CIV.A. 09-383-ML, 2014 WL 2766777, at *2. As a result, if the Court concludes it is necessary or desirable to consider a new or supplemental analysis by an independent fiduciary pursuant to PTE 2003-39, Class Counsel respectfully suggests that such should be ordered to be heard in conjunction with final approval and submitted on the final approval schedule outlined in the chart below. *See infra* Part II.H.

### F.  The Proposed Form and Manner of Notice Are Appropriate.

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement.  *See* Manual for Complex Litig. §§ 21.312, 21.631 (4th ed. 2011); *Grunin*, 513 F.2d at 120; *see also* 3b J. Moore, Federal Practice ¶ 23.80(1) at 23-1502.  Settlement notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).   Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin*, 513 F.2d at 121).   Notice need not provide "a complete source of information" or an exact amount of recovery for each class member.   *Id.* (citing *DeBoer*, 64 F.3d at 1176).   The best notice practicable under the circumstances means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).   Notice that is mailed or emailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice.   *Id.* at 176; *see Khoday v. Symantec Corp.*, No. 11CV00180JRTTNL, 2015 WL 12778002, at *4 (D. Minn. Oct. 8, 2015).

Rule 23(e) requires that notice of a proposed settlement inform class members of the following:  (1) the nature of the pending litigation, (2) the general terms of the proposed settlement, (3) that complete information is available from court files, and (4) that any class member may appear and be heard at the final approval hearing.   Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 8.32 at 262-268 (4th ed. 2002); *White*, 836 F. Supp. at 1462 (noting that the notice ordered pursuant to Rule 23(e) "described the terms of the proposed settlement and informed all class members" of the date of the final approval hearing and "that they had a right to submit written objections and to appear at the final approval hearing, in person or by counsel, to be heard in support of, or in opposition to, the settlement, or make any other statement of their position concerning the settlement.");

*In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2011 WL 717519, *5 (E.D. Mich. Feb. 22, 2011) (quoting Newberg).[4]

Here, because the class at issue in this case involves participants in, or beneficiaries of, the Starkey ESOP, a defined group of people for which Starkey has records, and because distributions for the Horizon Settlement and Release require communication with ESOP participants and beneficiaries unrelated to the Settlement, Class Counsel does not believe that a third-party Settlement Administrator is necessary. *See* Baxter-Kauf Decl. ¶ 12. Instead, the Settlement provides that Starkey will provide physical address and e-mail information to Class Counsel for all class members, and Class Counsel will contact Settlement Class Members via email and mail. Baxter-Kauf Decl. ¶ 12; Ex. A ¶¶ 9-11. Horizon Bank, as trustee of the ESOP, will administer the Settlement and its distribution if finally approved. Ex. A at 12. A copy of the short and long form notices to be distributed are attached as Exhibits D and E to the Baxter-Kauf Declaration for the Court's review and approval.

Based on records from Starkey, Plaintiffs have determined that the class is comprised of approximately 949 current ESOP members or beneficiaries, for which Plaintiffs have current, verified e-mail addresses, in addition to approximately 3,056

---

[4] As noted in the Manual for Complex Litigation, Rules 23(b)(1) and (b)(2) may not mandate notice or an opt-out opportunity, but amended Rule 23(c)(2)(A) recognizes a court's discretion to require notice in such cases. *See* Manual for Complex Litig. § 21.211 (4th Ed. 2011). In the interest of ensuring fairness to the class, Class Counsel recommends the proposed Notice Plan, including the opportunity for objection and exclusion, for all class members regardless of whether the Court certifies the Settlement Class pursuant to Rule 23(b)(2), Rule 23(b)(3), or both.

terminated or former members or beneficiaries of the ESOP for which Plaintiffs have mail addresses. Baxter-Kauf Decl. ¶ 13. This information is based on current records from both Starkey and Horizon. *Id.* The Notice Plan contemplates sending an e-mail notice to Class Members for which such address is available, or a mail notice if no e-mail address is available, within twenty-one (21) days of entry of the Preliminary Approval Order (the "Notice Deadline").

The Notice will include the following: a description of the material terms of the Settlement; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and contact information at which Settlement Class Members may access this Settlement, other related documents and information, or request additional information. Baxter-Kauf Decl. ¶¶ 14-15; Ex. A at 13. The Mail Notice may be provided by postcard in abbreviated form with direction to a website that includes the remainder of the information to be provided, which Class Counsel will establish by the Notice Deadline. *Id.* A copy of the short form notice contemplated to be mailed is attached as Exhibit E. Any postcard mailed will include Notice of the Settlement and the material dates listed herein. Baxter-Kauf Decl. ¶ 15; Ex. A at 13. The Notice Plan also includes contingencies for re-mailing notices if they are returned. Ex. A at 13-14.[5]

---

[5] The proposed Notice Plan does not include publication notice. Courts have determined that "[i]f there are few or none [unidentified class members], no publication notice will be necessary." *Lamb v. United Sec. Life Co.*, 59 F.R.D. 25, 42 (S.D. Iowa 1972); *accord Grunin*, 513 F.2d at 121–22; *see also Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 276 (D. Md. 2012) (denying request for publication notice where court was "confident that

The notice will clearly and concisely inform Settlement Class Members that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, and object by following procedures outlined in the notice.  Baxter-Kauf Decl. ¶ 15; Ex. A ¶¶ 9-15.  Class Counsel also requests that the Court order procedures for Class Members to request to "opt out" (i.e., to be excluded from the Settlement Class) and to object to the Settlement.  *Accord Petrovic*, 200 F.3d at 1153; *see* Ex. A ¶¶ 13-15.  Under the proposed Notice Plan, exclusion requests must be made in writing, including the Class Member's name, address, telephone number, statement that the Class Member wants to be excluded, the name of this proceeding, and signature.  Ex. A. ¶ 13.  Requests to opt out shall be considered valid if the Class Member returns the information described above postmarked no more than sixty (60) days after the Notice Deadline, and, if the requirements are met, Class Members who validly request exclusion shall be excluded from the Settlement Class.  *Id.*  Class Counsel will notify Starkey and Horizon Bank within seven (7) days of the Opt-Out Deadline of the list of Class Members requesting to opt out.  *Id.*

For objections, Class Counsel recommends a process for Settlement Class Members to object to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or the application for Service Awards.  Ex. A ¶ 14.  Class Counsel suggests that objections to the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses, and/or to the application for Service Awards need be filed electronically with the

individual mailing will be sufficient to provide notice to the vast majority of potential class members").

Court, or mailed to the Clerk of the Court and to Class Counsel, and that Class Counsel will provide any such objections to the Settling Defendant and Horizon Bank within seven (7) days of receipt. *Id.* The Settlement Agreement provides a list of requirements for valid objections, which Class Counsel would include on the Notice website and direct potential objectors to in the Notice as part of the Notice Plan. Ex. A ¶ 14; Baxter-Kauf Decl. ¶¶ 14-15.

Finally, if and when the Settlement is finally approved, Horizon Bank will be responsible for accounting for distribution of the Settlement Amount to Settlement Class Members who have not excluded themselves, determining necessary eligibility, and for disbursing funds transferred to Horizon Bank by Starkey. Ex. A. ¶ 5. Class Counsel, in consultation with Starkey and Horizon, will report to the Court that notice obligations have been satisfied in conjunction with the motion to finally approve the settlement. Ex. A. ¶ 10.

Plaintiff respectfully submits that the multifaceted, comprehensive notice plan developed by the parties provides the best notice practicable under the facts and circumstances of this case and fully satisfies due process requirements. *See Eisen*, 417 U.S. at 175 (when a class member's name and address is known or easily ascertainable, individualized notice by mail is the "best notice practicable"); *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 70 (D.D.C. 2018) (email notice alone may be best notice practicable based on circumstances of class, amount of recovery, and address reliability consistent with *Eisen*). Class Counsel therefore requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Settlement Agreement.

### G. The Request for a Service Award for the Proposed Settlement Class Representatives Is Fair and Reasonable.

Class Counsel respectfully requests that the Court approve a statement—to be included in the Notice sent to the Settlement Class—that Class Counsel will request the payment of service awards to the Settlement Class Representatives in recognition of their service as Class Representatives in this litigation. Ex. A ¶ 4. Class Counsel will request up to a $4,000 service award for each of Settlement Class Representatives Jaime Beck, Byron Hanson, and Lynn Melcher, whose service to the Class included conducting an investigation of the case, consulting extensively with counsel, providing numerous documents, and, in the case of Ms. Melcher, pursuing a previous books and records request. Baxter-Kauf Decl. ¶ 18.

Courts recognize the purpose and appropriateness of service awards to class representatives. *See*, *e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716460, *2 (D. Minn. Feb. 27, 2013) (approving $5,000 service award to each of nine class representatives and $7,500 to seven individual consumer class representatives, noting that the service payments "reflect the efforts by the class representatives to gather and communicate information to counsel and act as the public face of the litigation" and explaining that each class representative "assisted with the investigation and preparation of these suits, gathered documents for production and helped class counsel"); *White*, 822 F.2d at 1406 (noting that "[c]ourts . . . routinely approve such awards for class representatives who expend special efforts that redound to the benefit of absent class members," and collecting cases).

The proposed Settlement Class Representatives could have simply awaited the outcome of this litigation and may have received the same benefits as any other Settlement Class Member.  However, if each had done so, there would be no benefits to any Class Member whatsoever. Instead, each proposed Settlement Class Representative stepped up to lead this litigation and represent the interests of the Class.  They remained committed to and actively participated in this litigation against a formidable defendants on behalf of a large group of class members.  A service payment for the proposed Settlement Class Representatives is appropriate.

**H. The Court Should Schedule A Final Approval Hearing.**

The last step in the settlement approval process is the Final Approval Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlement.  The Final Approval Hearing should also include consideration of Class Counsel's request for payment of attorney's fees and costs in the amount not to exceed $46,250, to be submitted via separate motion and paid separately by Starkey.  At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed Settlement if they choose.  The Parties propose the following schedule of events necessary for disseminating notice to the Settlement Class and the Final Approval Hearing.

| DATE | EVENT |
|---|---|
| Within 10 days of the filing of the motion for preliminary approval[6] | Settling Defendant to serve or cause to be served to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 required notice and/or materials. |
| Within 21 days after entry of the preliminary approval order | Notice Deadline: Class Counsel to provide direct mail and email notice, and implement Notice Plan ordered by the Court |
| 60 days after the Notice Deadline | Opt-Out and Objection Deadline |
| 7 days after the Opt-Out Deadline | Class Counsel to provide Settling Defendant and Horizon Bank of list of all persons who have timely and adequately requested exclusion from the Settlement Class and all Objections received on the Objection Deadline |
| No fewer than 30 days before Final Approval Hearing | Class Counsel to file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses, and for Service Awards |
| No fewer than 17 days before Final Approval Hearing | Deadline for Objectors, if any, to file response to Class Counsel's motions for final approval of the Settlement, for attorneys' fees, costs, and expenses, and for Service Awards |
| No fewer than 10 days before Final Approval Hearing | Deadline for Class Counsel to file response to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses, and for any Service Award |

---

[6] Under the terms of the Settlement Agreement (¶ 7), within 10 days of the filing of this motion for preliminary approval, Starkey shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  Under CAFA, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b).  Plaintiffs' proposed timeline is designed to ensure ample time for compliance with CAFA and other required deadlines.

| DATE | EVENT |
|------|-------|
| No fewer than 90 days after mailing of CAFA Notice, and No fewer than 118 days after entry of the preliminary approval order | Final Approval Hearing |

### III.   CONCLUSION

For these reasons, Class Counsel respectfully ask the Court to enter an Order: (1) certifying the Settlement Class for purposes of settlement; (2) appointing Jaime Beck, Byron Hanson, and Lynn Melcher as Settlement Class Representatives; (3) appointing the undersigned counsel as Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Settlement Class; (6) directing that notice to the Settlement Class be disseminated in the manner described in the Notice Plan, including information that Plaintiffs intend to request payment of service awards to the Settlement Class Representatives in the amount of $4,000 per Settlement Class Representative, and attorney's fees and costs in the amount not to exceed $46,250 at the Final Approval Hearing; and (7) setting the proposed schedule for completion of further settlement proceedings, including a deadline for Settlement Class Members to request exclusion from the Settlement Class or file objections to the Settlement, and scheduling the Final Approval Hearing.

Dated: June 1, 2021                    */s/ Kate M. Baxter-Kauf*
                                       Gregg M. Fishbein, No. 202009
                                       Kristen G. Marttila, No. 0346007
                                       Kate M. Baxter-Kauf, No. 392037
                                       Arielle S. Wagner, No. 398332
                                       **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                       100 Washington Avenue South, Suite 2200
                                       Minneapolis, MN 55401-2159
                                       Telephone: (612) 339-6900
                                       Facsimile: (612) 339-0981
                                       gmfishbein@locklaw.com
                                       kgmarttila@locklaw.com
                                       kmbaxter-kauf@locklaw.com
                                       aswagner@locklaw.com

                                       *Attorneys for Plaintiffs Jaime Beck, Byron
                                       Hanson, Lynn Melcher, and the Class*